HATHAWAY, J.
At issue in this case is whether a public school may administer payroll deductions for its employees who remit funds to the Michigan Education Association Political Action Committee (MEA-PAC), a segregated fund under MCL 169.255.
We conclude that the Court of Appeals clearly erred by holding that administration of a payroll deduction system is not allowed under Michigan law. We reverse the Court of Appeals’ judgment because a public school’s administration of a payroll deduction system (the system) that remits funds to a segregated fund is not precluded by any prohibition in MCL 169.257(1) and is therefore permitted.
MCL 169.257(1), commonly referred to as § 57 of the Michigan Campaign Finance Act (MCFA),[1] specifically prohibits a public body from using public resources to do three things: (1) make an expenditure, (2) make a contribution, and (3) “provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)” of the MCFA, MCL *22 169.204(3)(a).[2] First, the administration of such a system is not an “expenditure” under the MCFA because the cost of administration is an “expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee,”[3] which is an enumerated exception to the statutory definition of “expenditure.” Second, administration of the system is not a “contribution” as defined by the MCFA because there is no net conveyance of anything of monetary value made for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question. Last, a public school’s administration of a payroll deduction system does not “provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)”[4] as defined by the MCFA because the MEA-PAC fully anticipates prepayment for any administration costs. Thus, the administration of a payroll deduction system by a public school is permitted under the MCFA.
I. FACTS AND PROCEEDINGS
Petitioner, the Michigan Education Association (MEA), is a voluntary, incorporated labor organization that represents members employed by public schools, colleges, and universities throughout Michigan. The MEA’s political action committee, MEA-PAC, is a separate segregated fund under § 55 of the MCFA. MCL 169.255. According to the MEA, the MEA-PAC is funded in part by MEA member payroll deductions. The MEA (or its affiliates) has entered into collective bargaining agreements with various *23 public school districts throughout the state that require the school district employer to administer a payroll deduction plan for contributions to the MEA-PAC. The current case involves such an agreement between the Kalamazoo County Education Association/Gull Lake Education Association and the Gull Lake Public Schools. The Gull Lake collective bargaining agreement also requires the Gull Lake Public Schools to make other payroll deductions, such as the payment of MEA dues and service fees. The MEA plans to pay the Gull Lake Public Schools, in advance, for all anticipated costs to Gull Lake Public Schools attributable to administering payroll deductions to the MEA-PAC or any other separate segregated fund affiliated with the MEA. The MEA contends that under this proposal, Gull Lake Public Schools would not incur any costs or expenses in administering the requested deductions because the Gull Lake Public Schools would be paid in advance for such costs and expenses.
As a condition to implementing the collective bargaining agreement, a representative of the Gull Lake Public Schools requested that the MEA obtain a declaratory ruling on the validity of the payroll deduction system. On August 22, 2006, the MEA filed a request for a declaratory ruling with respondent, the Secretary of State. The MEA detailed its proposal for payroll deductions to be made by the Gull Lake Public Schools and asserted that the administration of the payroll deductions by the school district would not be an “expenditure” under the MCFA and would not violate § 57 of the MCFA, MCL 169.257. The MEA requested that the Gull Lake Public Schools be allowed to make and transmit payroll deductions requested by MEA members to MEA-PAC as long as the members had filled out voluntary consent forms and *24 either the MEA or the MEA-PAC had paid the school district, in advance, for any costs associated with administering those payroll deductions. The MEA also asked the Secretary of State for a declaratory ruling on what costs it should consider in determining the costs attributable to administering the payroll deductions that are to be transmitted to the MEA-PAC.
On November 20, 2006, the Secretary of State ruled that the Gull Lake Public Schools could not make and transmit payroll deductions requested by MEA members to the MEA-PAC because § 57 of the MCFA prohibits a public body from making expenditures or collecting contributions for a political action committee. The ruling noted that the Department of State and the Attorney General had both previously concluded that a public body is prohibited from collecting and remitting contributions to a committee through its administration of a payroll deduction plan. The ruling explained that § 55 of the MCFA allows named private entities to make expenditures for the establishment and administration and solicitation of contributions to a separate segregated fund. However, the ruling stated that no explicit provision in the MCFA authorizes a public body to do so and concluded that the school district is prohibited from expending governmental resources for a payroll deduction plan that deducts wages from its employees on behalf of the MEA-PAC.
The Secretary of State’s ruling further concluded that paying the costs of administering the payroll deductions in advance would not effectively avoid a violation of § 57. This conclusion was based on an analysis of this issue in a recent opinion of the Attorney General. OAG, 2005-2006, No 7187, p 81 *25 (February 16, 2006). Because the Secretary of State concluded that administration of a payroll deduction system would violate the MCFA, the ruling did not address what costs should be considered attributable to administering the payroll deductions or the dollar amount that should be prepaid.
The MEA petitioned for review of the declaratory ruling in the Ingham Circuit Court. On September 4, 2007, the trial court issued an opinion setting aside the declaratory ruling on the grounds that it was arbitrary, capricious, and an abuse of discretion. The trial court opined that if the costs of administration are paid in advance, administration of payroll deductions does not result in transfer of money to a union’s political action committee and, therefore, an “expenditure” has not been made within the meaning of the MCFA. Thus, the trial court held that a public body may administer payroll deductions as long as all the costs of making deductions are paid in advance.
The Secretary of State applied for leave to appeal in the Court of Appeals, which was granted. In a split decision, the Court of Appeals reversed the trial court’s opinion and held that, regardless of advance payment for the associated costs, a public school’s administration of a payroll deduction system is still an “expenditure” under the MCFA and thus prohibited.[5] Judge WHITBECK dissented, and would have held that administration of a payroll deduction system is not an “expenditure”[6] as the MCFA defines it.
The MEA sought leave to appeal in this Court. This Court granted oral argument on whether to grant the *26 application[7] and subsequently granted leave to appeal.[8]
II. ANALYSIS
The issue in this case is whether § 57 of the MCFA, MCL 169.257(1), prohibits a public school from administering a payroll deduction system that remits funds to the MEA-PAC. This is an issue of statutory construction, which we review de novo.[9]
To interpret the MCFA, we apply the established rules of statutory construction. “Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature.”[10] *27 Accordingly, a Court must interpret the language of a statute in a manner that is consistent with the legislative intent.[11] In determining the legislative intent, the actual language of the statute must first be examined.[12] “As far as possible, effect should be given to every phrase, clause, and word in the statute.”[13] When considering the correct interpretation, a statute must be read as a whole.[14] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[15] In defining particular words within a statute, a court “must ‘consider both the plain meaning of the critical word or phrase as well as “its placement and purpose in the statutory scheme.” ’ ”[16] When a statute explicitly defines a term, the statutory definition controls.[17]
In applying these established rules of statutory construction, we start our analysis with a review of the relevant statutory language. Section 57 of the MCFA, MCL 169.257(1), prohibits public bodies from using public resources to make expenditures, contributions, or provide volunteer services that are excluded from the definition of “contribution” under § 4(3) (a) of that act, MCL 169.204(3)(a). The statute provides in pertinent part:
A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office *28 space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a). [MCL 169.257(1) (emphasis added).]
Thus, § 57 specifically prohibits a public body from using, or authorizing the use of, public resources to do three things: (1) make an expenditure, (2) make a contribution, or (3) provide volunteer services that are excluded from the definition of “contribution” under § 4(3)(a). The plain language of the statute does not prohibit any other activity. Therefore, if the administration of the payroll deduction system is not tantamount to doing one of these three things, the administration of the system is permissible under Michigan law.
A. EXPENDITURE
We first examine whether a public school’s administration of a payroll deduction system that remits funds to the MEA-PAC is an impermissible expenditure under § 57. “Expenditure” is specifically defined by the MCFA, so this definition controls for purposes of applying § 57. The general definition of “expenditure” under the MCFA is set forth in § 6, which provides in pertinent part:
(1) “Expenditure” means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. Expenditure includes, but is not limited to, any of the following:
(a) A contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomi *29 nation or election of a candidate or the qualification, passage, or defeat of a ballot question.
(2) Expenditure does not include any of the following:
(a) An expenditure for communication by a person with the person’s paid members or shareholders and those individuals who can be solicited for contributions to a separate segregated fund under [MCL 169.255].
(c) An expenditure for the establishment, administration, ■ or solicitation of contributions to a separate segregated fund or independent committee. [MCL 169.206 (emphasis added).]
Thus, MCL 169.206(1) details the general definition of “expenditure,” which is expansive. It includes a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. The definition also includes a contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question. However, despite its expansive scope, the statutory definition of “expenditure” contains explicit exceptions under MCL 169.206(2), outlining items that cannot be considered an expenditure under the MCFA even though they may qualify under the expansive general definition outlined in MCL 169.206(1).
We now consider whether a public school’s administration of a payroll deduction system is an “expendí *30 ture” as defined by the MCFA. The administration of a payroll deduction system does arguably provide services to the MEA and the MEA-PAC in facilitating payroll deductions from members by providing personnel and computer services. The system allows MEA members to authorize the school to automatically deduct money from their paychecks and remit the funds to the MEA-PAC. The MEA-PAC is a separate segregated fund under MCL 169.255 because it has been established by the MEA, a labor organization, to make contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.[18] Thus, the payroll deduction system administers member contributions to a separate segregated fund. Although this process falls within the general definition of “expenditure” under MCL 169.206(1), the administration of such a system is explicitly excluded from the statutory definition under MCL 169.206(2)(c). To reiterate, MCL 169.206(2)(c) excludes from the definition of “expenditure” any “expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee”[19] A public school’s administration of a payroll deduction falls squarely within the statutory exception. The sys *31 tem is set up to facilitate MEA member contributions to their separate segregated fund, the MEA-PAC. Therefore, the administration of the system is not an “expenditure” under the MCFA.
The Secretary of State argues that the statutory exception in MCL 169.206(2)(c) should not be applied to public bodies because the Legislature intended to treat public bodies differently from private entities and political action committees under the MCFA. However, this argument disregards the plain language of the statute. MCL 169.206(2)(c) is contained within the definitional provisions of the MCFA and includes no language limiting its application to sections of the MCFA that deal only with private entities and political action committees. MCL 169.201(2), on the other hand, explicitly mandates that “[e]xcept as otherwise defined in this act, the words and phrases defined in [MCL 169.202 to 169.212] shall, for the purposes of this act, have the meanings ascribed to them in those sections.” Thus, the statutory definition of “expenditure” controls and applies to the entire MCFA, including § 57, exceptions and all.
The Court of Appeals clearly erred by holding that a public school’s administration of a payroll deduction system is an expenditure. Without providing any independent statutory analysis, the Court of Appeals concluded that the administration of the system is an expenditure by relying solely on the Secretary of State’s prior interpretation of the term. The Court of Appeals reasoned:
The Secretary previously issued an interpretive statement indicating that “the department interprets the term ‘expenditure’ to include the costs associated with collecting and delivering contributions to a committee” and that “[a] payroll deduction system is one method of collecting and *32 delivering contributions.” Interpretative Statement to Mr. Robert LaBrant (November 14, 2005).[20]
Without any independent statutory analysis, the Court of Appeals then concluded: “We find nothing in the plain language of the MCFA that indicates reimbursement negates something that otherwise constitutes an expenditure.”[21]
The Court of Appeals erred by considering whether a supposedly illegal expenditure could be cured without first analyzing whether the Secretary of State’s interpretation of the term “expenditure” comported with the statute. The Secretary of State’s interpretation of the MCFA is not binding on the judiciary, and the Court of Appeals should have independently considered whether the administration of a payroll deduction system is an “expenditure.” [22] Most importantly, the Secretary of State’s interpretation of “expenditure” is incorrect because it directly conflicts with the relevant statutory language. The Secretary of State’s interpretation of “expenditure” includes costs associated with collecting and delivering contributions to a committee. But, as previously explained, the statutory definition of “expenditure” explicitly excludes these costs. As a result, the Court of Appeals clearly erred by adopting respondent’s interpretation of “expenditure.” The plain language of the statute dictates that the administration costs at issue are excluded from the statutory term “expenditure.”
Administration of a payroll deduction system is an “expenditure for the establishment, administration, or *33 solicitation of contributions to a separate segregated fund or independent committee,” and thus is an enumerated exception to the statutory definition of “expenditure.” Therefore, the administration of the payroll deduction system is not an “expenditure” as defined by the MCFA and is not prohibited by § 57 on that ground.
B. CONTRIBUTION
We next examine whether a public school’s administration of a payroll deduction system is an impermissible “contribution” under the MCFA.[23] “Contribution,” like “expenditure,” is specifically defined by the MCFA, and this definition controls for purposes of application to § 57. The definition of “contribution” under the MCFA is set forth in MCL 169.204, which provides:
(1) “Contribution” means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.
(2) Contribution includes the full purchase price of tickets or payment of an attendance fee for events such as dinners, luncheons, rallies, testimonials, and other fund-raising events; an individual’s own money or property other than the individual’s homestead used on behalf of that individual’s candidacy; the granting of discounts or rebates not available to the general public; or the granting of discounts or rebates by broadcast media and newspapers *34 not extended on an equal basis to all candidates for the same office; and the endorsing or guaranteeing of a loan for the amount the endorser or guarantor is liable.
(3) Contribution does not include any of the following:
(a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid.
(b) Food and beverages, not to exceed $100.00 in value during a calendar year, which are donated by an individual and for which reimbursement is not given.
(c) An offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt. [Emphasis added.]
The statutory definition of “contribution” includes the term “expenditure.” Because “expenditure” is explicitly defined by the MCFA, the statutory definition controls.[24] We have already explained why the administration of a payroll deduction system is not an “expenditure” under the MCFA and thus cannot be a contribution on that basis. The only other way that the administration of the system could be a “contribution” under the MCFA would be if administering the system resulted in a “transfer of anything of ascertainable monetary value . . . made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.”
The Secretary of State argues that the actual and intangible costs associated with the administration of a payroll deduction system constitute a contribution because there is a transfer of something of ascertainable *35 monetary value from the school district to the MEA-PAC and the transfer, although made pursuant to a collective bargaining agreement, is made for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question. The Secretary of State asserts that the labor and computer resources that are expended to administer the payroll deduction system have an ascertainable monetary value, and the fact that they are expended for the benefit of the MEA-PAC conveys value to the MEA-PAC. The Secretary of State further argues that prepayment for the services does not negate the transfer because MEA-PAC still receives the benefit of the services.
We disagree with this interpretation of the word “transfer” in the statute. Because “transfer” is a nontechnical word that is not defined within the statute, we first look to the plain meaning of the term to ascertain what the Legislature intended by using “transfer” to define a “contribution.”[25] The first dictionary definition of “transfer” is “to convey or remove from one place, person, etc., to another.”[26] In order for there to be a contribution, “anything of ascertainable monetary value” must be conveyed from one entity to another.
There are two competing ways in which to interpret the word “transfer” in the statute. The first way to read the statute would require that any conveyance of value for services provided to a campaign, regardless of whether the services are paid for, would constitute a contribution. The second way to read the statute would require a net conveyance of value in order to be a “transfer of anything of ascertainable monetary value.”
*36 We conclude that the statute must be read to require a net conveyance of monetary value, as opposed to a mere exchange of value. Any other interpretation of “contribution” would lead to an absurd result, and statutes must be construed to prevent absurd results.[27] For example, if the statute were to be interpreted in the manner the Secretary of State suggests, then a print shop that sells signage to a campaign in the normal course of business would be making a contribution to the campaign because it has transferred something of monetary value to the campaign, even though the shop has been compensated for the cost of providing the signage. Such an interpretation of “contribution” would defy common sense, and we do not read the statute in this manner. Instead, we conclude that the statute requires a net conveyance of “anything of monetary value” in order for there to be a campaign contribution. If costs for administering the payroll deduction system are paid in advance, there is no net conveyance of anything of monetary value, and there is no contribution.
Furthermore, our conclusion that a “contribution” under MCL 169.204(1) requires a net transfer of value comports with the remainder of that section, which specifically excludes from the statutory definition of “contribution” any “contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt.” MCL 169.204(3)(c). In other words, if the contribution is rejected, returned, or refunded, it is no longer a “contribution” under the MCFA. Moreover, MCL 169.204(2) explains that a “contribution” includes “the granting of discounts or rebates not *37 available to the general public . . . This implies that when an entity provides products or services at full price, the entity is not making a contribution. Thus, the statute clearly requires that there be a net transfer of value in order for there to be a contribution under the MCFA.
The MEA plans to prepay the school district for all ascertainable costs associated with the administration of a payroll deduction system, and in fact asked the Secretary of State for a declaratory ruling regarding the costs to be prepaid. The administration of the payroll deduction system will not result in a net transfer of anything of ascertainable monetary value as all costs will be ascertained and prepaid. Accordingly, there is no contribution under the MCFA, and a public school’s administration of a payroll deduction system is not prohibited by § 57 on that ground.
Additionally, a public school’s administration of a payroll deduction system is not an impermissible contribution under the MCFA because the system is not administered “for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.”[28] When a public body administers a payroll deduction plan, it does not do so in an attempt to influence a political race or a ballot question. Rather, administering the plan is one step removed: it merely allows someone else to make a contribution for the purpose of influencing a political issue. The public body administers the plan simply because it is required to do so as part of a labor contract between the public body and its employees. Consequently, because a public school’s administration of a payroll deduction system is not done for the purpose of *38 influencing a political issue, the administration of the system is not a contribution under the MCFA.[29]
C. VOLUNTEER PERSONAL SERVICES
Lastly, we examine whether a public school’s administration of a payroll deduction system impermissibly “provide[s] volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)” of the MCFA. As noted above, § 4(3) provides:
Contribution does not include any of the following:
(a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid. [MCL 169.201(3).]
Although such services are thus not considered a contribution for purposes of the rest of the MCFA, § 57 specifically indicates that public bodies cannot use public resources to provide volunteer services that are not compensated. However, the administration of the payroll deduction system at issue does not involve volunteer services by public employees because the *39 MEA intends to prepay for all services rendered. Because volunteer services are not defined by the statute, we again look to the plain meaning of the terms to discern the legislative intent. Dictionary definitions of “volunteer” include “a person who performs a service willingly and without pay.”[30] Willingness to perform an activity is not enough to fall within the scope of this subsection; the activity must also be performed without pay. In this case, the MEA fully anticipates payment and plans to prepay for any administration costs. As a result, a public school’s administration of a payroll deduction system does not “provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)” of the MCFA and is not prohibited by § 57 on this final ground. Therefore, the administration of a payroll deduction system by a public school is permitted under the MCFA.
III. CONCLUSION
A public school may administer payroll deductions for its employees who remit funds to the MEA-PAC, because MCL 169.257(1) only prohibits a public body from using public resources to do three things: (1) make an expenditure, (2) make a contribution, and (3) provide volunteer personal services that are excluded from the definition of “contribution” under MCL 169.204(3)(a). First, the administration of the system at issue is not an “expenditure” under the MCFA because the cost of administration is an “expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee,”[31] which is an enumerated exception to the statutory definition of “expenditure.” Second, adminis *40 tration of the system is not a “contribution” as defined by the MCFA because there is no net conveyance of anything of monetary value made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question. Last, a public school’s administration of a payroll deduction system does not “provide volunteer personal services that are excluded from the definition of contribution under [MCL 169.204(3) (a)]” because the MEA-PAC fully anticipates prepayment for any administration costs. Thus, the administration of a payroll deduction system by a public school is permitted under the MCFA, and the Court of Appeals erred by concluding that it is not. We reverse the judgment of the Court of Appeals.
Reversed.
KELLY, C.J., and CAVANAGH and DAVIS, JJ., concurred with Hathaway, J.

 MCL 169.201 et seq.

 MCL 169.257(1).

 MCL 169.206(2)(c),

 MCL 169.257(1).

 Mich Ed Ass’n v Secretary of State, 280 Mich App 477, 486-487; 761 NW2d 234 (2008).

 Id. at 490.

 Mich Ed Ass’n v Secretary of State, 483 Mich 1001 (2009). The Court directed the parties to brief
(1) whether a school district’s use of government resources for a payroll deduction plan for contributions made by members of the . . . Michigan Education Association (MEA) to MEA’s political action committee is either an “expenditure” or a “contribution” under § 6 of the Michigan Campaign Finance Act (MCFA), MCL 169.206; (2) whether §57(1) of the MCFA, MCL 169.257(1), prohibits a school district from expending government resources for such a payroll deduction plan if the costs of the plan are prepaid by the MEA; and (3) whether a school district has the authority to collect and deliver payroll deductions for such contributions, [id.]

 Mich Ed Ass’n v Secretary of State, 486 Mich 952 (2010). In the order granting leave to appeal, this Court asked the parties to include among the issues to be briefed the effect, if any, of Citizens United v Fed Election Comm, 558 US_; 130 S Ct 876; 175 L Ed 2d 753 (2010), on this case. We note that because the issues presented in this case can be resolved under Michigan law, we do not opine on the application of United States Supreme Court caselaw.

 In re Investigation of March 1999 Riots in East Lansing, 463 Mich 378, 383; 617 NW2d 310 (2000).

 Potter v McLeary, 484 Mich 397, 410; 774 NW2d 1 (2009), citing Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999).

 Potter, 484 Mich at 411.

 Id. at 410.

 Sun Valley, 460 Mich at 237.

 See id.

 Herman v Berrien Co, 481 Mich 352, 366; 750 NW2d 570 (2008).

 Id., quoting Sun Valley, 460 Mich at 237, quoting Bailey v United States, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

 Tryc v Michigan Veterans’ Facility, 451 Mich 129, 136; 545 NW2d 642 (1996).

 MCL 169.255(1) provides, in pertinent part:
A corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.

 MCL 169.206(2)(c).

20 Mich Ed Ass’n, 280 Mich App at 486.

 Id.

 This Court is not bound by the Secretary of State’s interpretations of the law or by Attorney General opinions. See Traverse City Sch Dist v Attorney General, 384 Mich 390, 412; 185 NW2d 9 (1971).

 Although the Court of Appeals did not consider whether administration of the payroll deduction system is a contribution, we nevertheless discuss the issue because it is another statutory basis for an argument that the administration of a payroll deduction system might be impermissible and the litigants have briefed and argued the issue before this Court.

 Tryc, 451 Mich at 136.

 MCL 8.3a; Oakland Co Bd of Rd Comm’rs v Mich Prop & Cas Guaranty Ass’n, 456 Mich 590, 604; 575 NW2d 751 (1998).

 Random House Webster’s College Dictionary (1997).

 McAuley v Gen Motors Corp, 457 Mich 513, 518; 578 NW2d 282 (1998).

 MCL 169.204(1).

 A public body has the authority to administer payroll deduction plans. The wages and fringe benefits act, MCL 408.477, provides that
[elxcept for those deductions required or expressly permitted . .. by a collective bargaining agreement, an employer shall not deduct from the wages of an employee, directly or indirectly, any amount including an employee contribution to a separate segregated fund established... under [MCL 169.255] without the full, free and written consent of the employee ....
Thus, under the plain language of MCL 408.477, public bodies have the authority to administer a payroll deduction plan that contributes money to the MEA-PAC if the MEA enters into a collective bargaining agreement that expressly permits the deductions.

 Random House Webster’s College Dictionary (1997).

 MCL 169.206(2)(c).