**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JUNE 30, 2011

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN EDUCATION ASSOCIATION,

Petitioner-Appellant,

v                                                          No. 137451

SECRETARY OF STATE,

Respondent-Appellee.

ON REHEARING

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case returns to this Court on a motion for rehearing. The Michigan Campaign Finance Act (MCFA) prohibits a "public body" from using public resources to make a "contribution or expenditure" for political purposes. MCL 169.257(1). At issue in this case is whether a public school district's administration of a payroll deduction plan that collects and remits political contributions from its employees to the Michigan Education Association's political action committee (MEA-PAC) runs afoul of § 57 of MCFA, MCL 169.257(1). We hold that it does. Through administration of a payroll

deduction plan that remits funds to a partisan political action committee, a school district makes both a "contribution," because public resources are being used to advance the political objectives of the committee, and an "expenditure," because public "services" and "facilities in assistance of" these same political objectives are being provided. Thus, the school district's payroll deduction plan is prohibited by MCL 169.257. This interpretation is consistent not only with the language of the statute, but also with the evident purpose of § 57, which is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. Accordingly, we grant the motion for rehearing, vacate the December 29, 2010, decision of this Court, and affirm the judgment of the Court of Appeals.[1]

## I. FACTS AND HISTORY

Petitioner, the Michigan Education Association (MEA), is a voluntary, incorporated labor organization that represents approximately 136,000 members

---

[1] Concerning Justice HATHAWAY's reference to now Chief Justice YOUNG's dissent in *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 27; 795 NW2d 101 (2009) (*USF&G*), see the Chief Justice's response in his concurring opinion in *Anglers of the AuSable v Dep't of Environmental Quality*, 489 Mich 884, 885 (2011), the thrust of which was that the majority opinion in *USF&G prevailed* over his dissent, as is the fate of most dissents. The Chief Justice casts his vote in this case as justices have traditionally done, in accordance with their original vote in the underlying case, and our new justices, Justices MARY BETH KELLY and ZAHRA, also cast their vote as new justices have traditionally done, in accordance with their best understanding of the law. See, e.g., *USF&G*, in which Justice HATHAWAY herself cast a vote in this manner, and *Duncan v Michigan*, 488 Mich 957 (2010) (DAVIS, J., concurring), in which the fourth justice in support of the former majority opinion in this case also cast his vote in this manner. Justice HATHAWAY would apparently require the majority justices in this case to abide by an entirely different set of legal rules.

employed by public schools, colleges, and universities throughout Michigan. The MEA-PAC is a separate segregated political fund established by the MEA in accordance with § 55 of MCFA, MCL 169.255. The MEA-PAC is significantly funded by payroll deductions of MEA members who have authorized the deductions. The purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in politics by electing candidates favored by the MEA and by furthering the enactment of MEA legislative and executive policy initiatives.

As a public-employee labor organization, the MEA has entered into collective bargaining agreements with various public school districts across the state. Some number of these agreements, including that between the MEA's locally affiliated Kalamazoo County/Gull Lake Education Associations and the Gull Lake Community Schools (the school district), require that a school district administer a payroll deduction plan for the contributions of MEA members to the MEA-PAC. Administration of the payroll deduction plan requires the school district to distribute payroll deduction forms; collect, enter, and monitor the data of participating MEA members; and record, track, and transmit payroll deductions to the MEA-PAC. In return for these services, the MEA has proposed to pay all costs that the school district incurs in administering the plan.

In this case, the school district conditioned acceptance of the collective bargaining agreement on the MEA obtaining a declaratory ruling concerning the validity of the payroll deduction plan. Accordingly, on August 22, 2006, the MEA filed a request for a declaratory ruling with respondent, the Secretary of State, to determine whether the

3

school district could make and transmit payroll deductions to the MEA-PAC.[2] Respondent ruled that, absent express statutory authority, the school district is prohibited from expending public resources for a payroll deduction plan on behalf of the MEA-PAC. The MEA appealed to the circuit court, which held that respondent's ruling was "arbitrary, capricious and an abuse of discretion," reasoning that, although the school district's administration of the plan constitutes an "expenditure" under MCFA, when the costs of administering the plan have been reimbursed, "no transfer of money to the MEA-PAC has occurred, and therefore an 'expenditure' has not been made within the meaning of the MCFA."

In a split decision, the Court of Appeals reversed, holding that § 57 of MCFA prohibits a "public body," such as a school district, from using public resources "to make a contribution or expenditure." According to the Court, the costs associated with the plan constitute an "expenditure," and the reimbursement of such costs does not alter that conclusion. *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 486; 761 NW2d 234 (2008). Judge WHITBECK dissented and would have affirmed the trial court, but on different grounds. He reasoned that the costs incurred by the school district in its administration of the payroll deduction plan do not constitute an "expenditure" as MCFA defines it. *Id.* at 490. The MEA then sought leave to appeal in this Court. On November 5, 2009, we heard oral arguments on the application,[3] and nearly seven months

---

[2] The Secretary of State is authorized to issue declaratory rulings to implement MCFA, MCL 169.201 *et seq*., in accordance with the Administrative Procedures Act, MCL 24.201 to 24.328.

[3] The Court directed the parties to brief

later we granted the MEA's application for leave to appeal.[4]  Finally, on December 29, 2010, a majority of this Court reversed the judgment of the Court of Appeals and held that a school district's administration of a payroll deduction plan that remits funds to the MEA-PAC "is not precluded by any prohibition in MCL 169.257(1) and is therefore permitted." *Mich Ed Ass'n v Secretary of State*, 488 Mich 18, 21; 793 NW2d 568 (2010). Respondent moved for rehearing of the Court's December 29, 2010, decision, arguing that the Court committed error by holding that a public school's administration of a payroll deduction plan that remits funds to a partisan political action committee was not prohibited by MCL 169.257(1).  We now grant respondent's motion for rehearing, and we vacate the December 29, 2010, decision of this Court, and affirm the judgment of the Court of Appeals.

---

(1) whether a school district's use of government resources for a payroll deduction plan for contributions made by members of [the MEA] to MEA's political action committee is either an "expenditure" or a "contribution" under § 6 of the [MCFA], MCL 169.206; (2) whether § 57(1) of the MCFA, MCL 169.257(1), prohibits a school district from expending governmental resources for such a payroll deduction plan if the costs of the plan are prepaid by the MEA; and (3) whether a school district has the authority to collect and deliver payroll deductions for such contributions. [*Mich Ed Ass'n v Secretary of State*, 483 Mich 1001 (2009).]

[4] The order granting leave to appeal directed the parties to address the effect, if any, of *Citizens United v Fed Election Comm*, 558 US __; 130 S Ct 876; 175 L Ed 2d 753 (2010). *Mich Ed Ass'n v Secretary of State*, 486 Mich 952 (2010).  It was clear from the outset that *Citizens United* had no discernible effect on this case and that the grant of leave to appeal, following the argument on the application, imposed unnecessary expenses on the parties and considerably delayed resolution of an important dispute of statewide importance.  See *id.* at 953 (MARKMAN, J., dissenting).

## II. STANDARD OF REVIEW

The interpretation of statutes constitutes a question of law that this Court reviews de novo on appeal. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## III. PURPOSE OF MCL 169.257

"It is well settled that the Legislature of this state is empowered to enact laws to promote and regulate political campaigns and candidacies." *Council No 11, AFSCME v Civil Serv Comm*, 408 Mich 385, 395; 292 NW2d 442 (1980) (citations omitted). The people of Michigan have granted the Legislature broad powers to regulate elections. Among other things, our Constitution empowers the Legislature to set forth the qualifications of electors; the time, place, and manner of elections; and limitations on terms of office. Const 1963, art 2, §§ 1 through 10. Furthermore, Const 1963, art 2, § 4 requires the Legislature to preserve the integrity of elections, providing in pertinent part:

> The legislature shall enact laws to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting.

Charged to preserve the "purity of elections" and to "guard against abuses of the elective franchise," the Legislature enacted MCL 169.257, commonly referred to as § 57 of MCFA. Section 57 prohibits a "public body" from using public resources "to make a contribution or expenditure" for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question. The clear purpose of § 57, as reflected in its language, is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections,

6

preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities.[5]

## IV.  ANALYSIS

MCL 169.257(1) provides, in pertinent part:

> A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure or provide volunteer personal services that are excluded from the definition of contribution under [MCL 169.204(3)(a)].

There is no question that a school district constitutes a "public body" within the meaning of § 57.[6]  Accordingly, the issue in this case is whether by administering a payroll deduction plan that remits funds to a political action committee, a school district makes a "contribution or expenditure" within the meaning of the same provision.  If the plan does, it is expressly prohibited.

## A.  "CONTRIBUTION"

MCL 169.204(1) defines a "contribution" as follows:

---

[5] See also, e.g., the political activities by public employees act, MCL 15.401 *et seq.* (providing that an employee of the state or local unit of government may not engage in political affairs during working hours); the Michigan Gaming Control and Revenue Act, MCL 432.201 *et seq.* (providing that members, employees, or agents of the Michigan Gaming Control Board may not engage in political activity for the duration of their employment); and Civil Service Rule 1-12.6 (prohibiting state employees from participating in political activities during working hours).

[6] MCFA defines a "public body" to include "[a] county, city, township, village, intercounty, intercity, or regional governing body; a council, school district, special district, or municipal corporation; or a board, department, commission, or council or an agency of a board, department, commissioner, or council."  MCL 169.211(6)(c).

> "Contribution" means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.[7]

An "in-kind contribution" is defined as a "contribution . . . other than money." MCL 169.209(3).

The school district's administration of the payroll deduction plan that facilitates payments to the MEA-PAC is prohibited by MCL 169.257(1) because the school district uses its public resources "to make a contribution" in a variety of ways. First, the school district employs public resources to administer the plan that allows MEA members "to make a contribution." For example, the school district must use its paper, pens, and copiers to develop and execute payroll deduction authorization forms; school personnel must collect, enter, and monitor the data of participating MEA members into computers and accounting software, all of which must be specifically configured to record, track, and transmit payroll deductions to the MEA-PAC; school personnel must then be prepared to respond to individual teachers who find it necessary from time to time to adjust or correct or withdraw their own deduction authorizations; and this process must necessarily involve the use of public office space, equipment, and employee time. Use of the school district's resources to facilitate MEA members' "contributions" constitutes a straightforward violation of MCL 169.257(1). More specifically, § 57(1) prohibits the school district from using its resources "to make a contribution." To "make" pertinently

---

[7] The MEA-PAC is a "person" because, as a separate segregated fund, it functions as the result of an organization or group of persons acting jointly. See MCL 169.211(1).

8

means "to cause to exist or happen[.]" *Random House Webster's College Dictionary* (2000), def 2. The school district "makes" a "contribution" to the MEA-PAC because it "causes to exist or happen" "contributions" from MEA members that otherwise would not be made but for the school district's administration of the payroll deduction plan.[8]

Second, the school district itself makes a prohibited "contribution" to the MEA-PAC because its administration of the payroll deduction plan constitutes something of "ascertainable monetary value." There is inherent value to the MEA-PAC in having payroll deductions automatically taken from members' wages as opposed to requiring individual solicitations by the MEA-PAC. That there is such "ascertainable monetary value" is self-evident from the very fact that the MEA-PAC has affirmatively sought out the assistance of the school district and has litigated to the highest court of this state an appeal asserting its right to enter into the instant agreement with the school district. Parties do not typically enter into contracts absent a belief that the rights or benefits accorded them under the contract have some "ascertainable monetary value," and the instant contract seems no different. Such value can almost certainly be identified as the sum of (a) the additional contributions resulting from the ease of the payroll deduction

---

[8] All agree that the MEA members' "payment" or "donation of money" to the MEA-PAC constitutes a "contribution" under MCL 169.204(1) and that the school district facilitates that "contribution" to the MEA-PAC. However, Justice CAVANAGH asserts that the school district does not employ public resources to "make" the MEA members' contribution because it "merely transfers money from one place to another." *Post* at 6 n 4. This characterization significantly trivializes the nature of the school district's participation in the MEA-PAC's fundraising. As already discussed, to "make" relevantly means to "cause to exist or happen." Simply put, if the public resources of the school district had not been employed to facilitate the MEA members' contributions, those "contributions" would not have "happened."

process compared to a political contribution process in which individual solicitations must be undertaken and (b) the reduced administrative and transactional costs of the former process compared to the latter process. The MEA obviously prefers the payroll deduction process because it is a more efficient, and a more productive, process by which to secure funding for its political activities. The school district is not incidental to this process, but constitutes an indispensable element. Without the school district's contracted-for services, some lesser amount of contributions would presumably be raised on behalf of the MEA-PAC, and at a greater cost.[9]

Third, the administration of the payroll deduction plan also constitutes an "in-kind contribution," defined by MCL 169.209(3) as a "contribution . . . other than money."

---

[9] Relying on the dictionary definition of "ascertain," Justice HATHAWAY asserts that the school district's administration of the payroll deduction plan does not have "ascertainable monetary value" because the monetary benefits conveyed to the MEA-PAC have not been "determined definitely, with certainty and assurance." *Post* at 11. Unfortunately, Justice HATHAWAY has defined the wrong word. "Ascertainable" does not mean "to find out definitely" or "learn with certainty or assurance," as Justice HATHAWAY opines, because that is the definition of "ascertain," not "ascertainable." *Random House Webster's College Dictionary* (2000). Rather, "ascertainable" means "*able* to be ascertained." *New Shorter Oxford English Dictionary* (3d ed) (emphasis added).

While the MEA has not provided this Court with numbers regarding the specific benefits yielded from the district's administration of the deduction plan, it is safe to say that the additional contributions garnered, and the reduction in administrative and transactional costs, are "able to be ascertained." In short, if the school district no longer automatically deducted contributions from the paychecks of its employees, the MEA would have to bear the added cost of individually contacting each of its members and individually soliciting contributions from them. Everyone understands that this procedure would be a far more costly, and less effective, way of collecting political contributions than the current procedure. Such a cost is easily "ascertainable," even if the MEA and Justice HATHAWAY are uninterested in calculating it, and thus the cost of direct solicitation that the MEA avoids by the current procedure constitutes a "contribution" as MCFA defines it.

10

Although it is clearly possible to quantify the time spent by employees and the resources expended by the school district in administering the deduction plan, and thereby to ascertain the cost of such a "contribution" to the school district, it is more difficult to quantify the intangible benefits that the MEA receives from the deduction plan. However, it is quite certain that these benefits substantially outweigh the costs to the school district, and therefore cannot be calculated simply by reference to the school district's costs. The most significant of these is simply the extent of *access* to a district's MEA membership that is afforded the MEA-PAC by the deduction plan. Such access avoids any need on the part of the MEA-PAC to establish its own administrative apparatus for political fundraising, vitiates its need to engage in mailings and alternative forms of communications with its members, and dispenses with its burden of having to process checks, money orders, or credit cards from contributors, as would be necessary for any other solicitor of political contributions. As MEA's counsel at oral argument acknowledged, this procedure has proven to be an "effective" means to raise money. Almost certainly, the marginal administrative costs of the payroll deduction plan to the school district, which already may have in place a mechanism by which taxes and charitable contributions can be deducted from employees' paychecks, will be less than the administrative costs of an equivalent plan to the MEA, which does not already have a similar mechanism in place. The difference between these respective costs can fairly be described as an "in-kind contribution" by the school district to the MEA-PAC, however difficult it may be specifically to quantify in dollars. It is a "contribution . . . other than

11

money" that is made for the "purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."[10]

The services undertaken on behalf of the MEA-PAC are "made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question," MCL 169.204(1), because, as discussed earlier, the purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in partisan politics.[11] Thus, the school district's administration of the deduction plan constitutes a

---

[10] Justice HATHAWAY asserts that "this argument *ignores* that an in-kind contribution must still be a 'contribution' as defined by the statute." *Post* at 12 (emphasis added). This point is hardly "ignored," for it constitutes the principal focal point of the instant section. That the administration of the deduction plan not only constitutes a "contribution" but also an "in-kind contribution" merely establishes an *additional* way in which the school district's administration of the plan is prohibited by MCFA.

[11] The previous majority opinion stated that "[w]hen a public body administers a payroll deduction plan, it does not do so in an attempt to influence a political race or a ballot question." *Mich Ed Ass'n*, 488 Mich at 37. However, that opinion failed to recognize that MCL 169.204(1) defines "contribution" as "a *payment . . . made for the purpose* of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." (Emphasis added.) As discussed, the school district uses its public resources "to make" the MEA members' payments. Therefore, the pertinent question is not whether the "public body" *itself* is attempting to influence a political race or ballot question, but whether *payments* that result from its administration of the payroll deduction plan are intended for that purpose. It is obvious here that the "payment[s] [are] made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." *Id.* This is the purpose that individual MEA members have in mind when they authorize payments, and it is the purpose that the MEA-PAC has in mind when it receives payments from the school district. It is equally obvious that the school district itself must be fully cognizant of this purpose both when it receives payments from individual MEA members and when it delivers payments to the MEA-PAC. That the school district itself might not care whether such payments will influence a political race or ballot question does not alter the fact that the *purpose* of these payments is to do precisely that.

12

"contribution" as that term is defined by MCL 169.204(1).[12]  Because the school district

employs public resources to make this "contribution," its administration of the deduction

plan is a straightforward violation of § 57 of MCFA.

## B.  "EXPENDITURE"

Section 57 of MCFA also prohibits a "public body" from using public resources to

make an "expenditure."  MCL 169.257(1).  An "expenditure" is defined as

> a payment, donation, loan, or promise of payment of money or anything of
> ascertainable monetary value for goods, materials, services, or facilities in
> assistance of, or in opposition to, the nomination or election of a candidate,
> or the qualification, passage, or defeat of a ballot question.  [MCL
> 169.206(1).]

The school district's administration of the payroll deduction plan on behalf of the MEA-

PAC constitutes a prohibited "expenditure" because the school district directly provides

"services" and "facilities in assistance of" the MEA-PAC.  The school district provides

"services" to the MEA-PAC in its administration of the deduction plan by developing and

executing payroll deduction authorization forms; by collecting, entering, and monitoring

the data of MEA members into computers and accounting software, all of which must be

configured to record, track, and transmit payroll deductions to the MEA-PAC; and by

accommodating individual teachers who find it necessary from time to time to adjust or

---

[12] The previous majority opinion erred when it concluded that administration of the plan "merely allows *someone else* to make a contribution for the purpose of influencing a political issue," *Mich Ed Ass'n*, 488 Mich at 37, i.e., the MEA member who has authorized the payroll deduction.  Instead, the school district *itself* makes both a "contribution" and an "in-kind contribution" by providing valuable services to the MEA-PAC in aid and furtherance of its political activities.  That is, quite independently of the contributions of individual MEA members, the school district contributes something of *further* "ascertainable monetary value" to the MEA-PAC.

13

correct or withdraw their deduction authorizations. Further, the school district provides "facilities in assistance of" the MEA-PAC through the use of public office space and equipment. These "services" and "facilities in assistance of" the MEA-PAC are, once again, made for the purpose of "the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question," MCL 169.206(1), because, as discussed previously, the purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in politics, by electing candidates favored by the MEA and by enacting MEA legislative and policy initiatives. Thus, the school district's administration of the payroll deduction plan constitutes an "expenditure" as that term is defined by MCL 169.206(1) and is specifically prohibited.

Justice HATHAWAY concedes that the school district's administration of the deduction plan "falls within the general definition of 'expenditure' under MCL 169.206(1) . . . ." *Post* at 6. However, she would hold, as would Justice CAVANAGH, that the plan also falls within a specific statutory *exclusion* from the definition of an "expenditure." This exception provides that an "expenditure" does not include "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." MCL 169.206(2)(c). According to Justice HATHAWAY, a school district's administration of a payroll deduction plan that remits payments to a political action committee constitutes an "'expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee'" and is, therefore, allowed under § 57. *Post* at 7, quoting MCL 169.206(2)(c). However, her analysis overlooks the fact that a "*public*

14

*body*," such as a school district, is not authorized to establish a separate segregated fund under MCFA and, therefore, may not rely on the § 6(2)(c) exclusion.

Instead, this exclusion is clearly designed to apply only to corporations and labor organizations that possess the authority to create, establish, administer, or fund separate segregated funds in the first place. This interpretation, limiting the § 6(2)(c) exclusion to corporations and labor organizations, is a necessary implication from the structure of MCFA for three reasons. First, § 54 of MCFA, MCL 169.254, imposes the same rule, prohibiting the making of a "contribution or expenditure," on corporations and labor organizations that § 57 imposes on public bodies. In pertinent part, § 54 provides:

> Except with respect to the exceptions and conditions in . . . *section 55* [MCL 169.255]. . . a corporation, joint stock company, domestic dependent sovereign, or labor organization shall not make a contribution or expenditure . . . . [MCL 169.254(1) (emphasis added).]

Second, unlike § 57, § 54 does not constitute an absolute prohibition against making a "contribution or expenditure"; rather, pursuant to § 55,

> [a] corporation organized on a for-profit or non-profit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees. [MCL 169.255(1).]

Third, there is no similar counterpart in § 57 that allows a "public body" to make "an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund . . . ." Thus, under § 55, the *only* entities allowed to establish a separate segregated fund are corporations, joint stock companies, domestic

15

dependent sovereigns, or labor organizations, such as the MEA. Considered together, § 55 and the § 6(2)(c) exclusion that permits an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund" provide a limited mechanism allowing entities such as the MEA to create, establish, administer, or fund a separate segregated fund for purposes that would otherwise be disallowed by § 54. In contrast, a "public body," such as a school district, is not entitled to create, establish, administer, or fund a separate segregated fund, under § 55 or any other provision, and thus may not rely on the § 6(2)(c) exclusion from the definition of an "expenditure."[13]

---

[13] Justice CAVANAGH asserts that there is "simply no basis in the statutory language to support the majority's position." *Post* at 12. As discussed, our position, limiting the § 6(2)(c) exclusion to § 55 entities, such as corporations and labor organizations, is a necessary and logical implication derived from MCFA. In discerning legislative intent, "[t]he whole act provides [the] proper 'frame of reference,'" and each section must be considered together with other sections. *Metro Council No 23, AFSCME v Oakland Co Prosecutor*, 409 Mich 299, 318; 294 NW2d 578 (1980) (citation omitted). The exclusion of certain expenditures from the definition of "expenditure" in § 6(2)(c) invokes exactly the same operative language as § 55 and is plainly directed toward elaborating on § 55 by making clear that no expenditures authorized by § 55 for the establishment of a separate segregated fund will be treated as a prohibited expenditure by § 54. This does not render § 6(2)(c) "superfluous" or "completely unnecessary," as Justice CAVANAGH claims. *Post* at 12. Rather, as already explained, § (6)(2)(c) serves to underscore, and to make explicit, what is otherwise only implicit in § 55-- that "expenditures" permitted by § 55 are not otherwise prohibited by § 54.

Furthermore, if § (6)(2)(c) is interpreted to apply to public bodies, which are not authorized to establish separate segregated funds in the first place, the operative language of § 57, which prohibits the use of public resources to subsidize partisan political activities, would be rendered null and void. When a political action committee commandeers the resources of the government to raise political contributions for its own benefit, as occurred here, that conduct could always be categorized under Justice CAVANAGH's interpretation as falling within the § 6(2)(c) exception and rendered permissible. Thus, the § 6(2)(c) exception would entirely consume the rule prohibiting public bodies from making "expenditures" for political purposes, and the Legislature would effectively have taken with the right hand what it had just given with the left.

16

Even if, as Justice HATHAWAY claims, the § 6(2)(c) exclusion is not limited to § 55 entities, her application of the exclusion remains illogical. Justice HATHAWAY concludes that although a school district's administration of the payroll deduction plan constitutes an "expenditure," it is nevertheless

> explicitly excluded from the statutory definition under MCL 169.206(2)(c), which provides that an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee" is not an "expenditure." A public school's administration of a payroll deduction system falls squarely within the statutory exception. The system is set up to facilitate MEA member contributions to their separate segregated fund, the MEA-PAC. Therefore, the administration of the system is *not* an "expenditure" under the MCFA. [*Post* at 6.]

Justice HATHAWAY thus concludes that the administration of a payroll deduction plan falls "squarely within the statutory exception." Under MCL 169.206(2)(c), an "expenditure" does not encompass what would otherwise be an "expenditure" for (a) establishment of a separate segregated fund or independent committee, (b) administration of a separate segregated fund or independent committee, or (c) solicitation of contributions to a separate segregated fund or independent committee. Thus, in order to

---

Under such an interpretation, § 6(2)(c) would allow the Secretary of State's office, for example, to solicit contributions to a partisan or special interest political action committee with each driver's license renewal communication; it would allow Secretary of State employees to administer the political contributions received through this process; it would allow Secretary of State facilities and computers to be deployed to make and print relevant informational pamphlets and political action committee materials; and it would allow the Secretary of State's office to attach the postage for these solicitations. This interpretation cannot conceivably be what the Legislature intended when it enacted MCFA. Reading MCFA in its entirety, and in context, it is clear that the Legislature intended the § 6(2)(c) exception to apply only to those entities that possess the authority to create, establish, administer, or fund separate segregated funds in the first place.

fall within the purview of this exception, a "public body" must be engaged in one of these enumerated activities. In this case, however, the school district is engaged in none.[14]

First, the school district is not making an "expenditure" for the *establishment* of a separate segregated fund or independent committee because the separate segregated fund, the MEA-PAC, has already been established by the MEA. In any event, the school district could not establish a separate segregated fund in the first place, because that

---

[14] Justice CAVANAGH concludes that MCFA excepts from the definition of "expenditure" an "expenditure" for the (a) establishment of contributions to a separate segregated fund, (b) administration of contributions to a separate segregated fund, and (c) solicitation of contributions to a separate segregated fund. Reading § 6(2)(c) in isolation could support his interpretation; however, reading MCFA in its entirety, in particular after due consideration of MCL 169.255(1), makes clear that the only reasonable interpretation of § 6(2)(c) is that it pertains to the "establishment" or "administration" of a "separate segregated fund" and not the "establishment" or "administration" of "contributions." See *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) ("The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended."). His interpretation disregards the fact that this Court must consider § 6(2)(c) and § 55 together, "so as to produce, if possible, an harmonious and consistent enactment" of MCFA. *State Treasurer v Wilson*, 423 Mich 138, 145; 377 NW2d 703 (1985). Unmistakably, the objective of § 55 is to provide authority for certain (private) entities to establish and operate a separate segregated fund, and, in pursuit of this objective, § 55 provides that such entities "may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund." As the only legislative authority allowing for the creation of a separate segregated fund, the use of the terms "establishment" and "administration" *must* pertain to the "establishment" or "administration" of a "separate segregated fund," and not to the "establishment" or "administration" of "contributions"; otherwise, the ability to establish and administer a separate segregated fund could not exist in the first place. And § 6(2)(c), which uses nearly identical language, must be interpreted the same way, "so as to produce . . . an harmonious and consistent enactment" of MCFA. *Wilson*, 423 Mich at 145.

authority is limited to the entities enumerated in § 55 (corporations, joint stock companies, domestic dependent sovereigns, and labor organizations).

Second, the school district is not making an "expenditure" for the *administration* of a separate segregated fund or independent committee because the school district is not "administering" the MEA-PAC; rather, the school district is simply administering the payroll deduction plan that remits funds to the MEA-PAC. That is, the school district makes no determinations at all concerning amounts of funds to be raised from MEA members or other funding sources; the nature and substance of communications to MEA members and other funding sources about the need and urgency of such contributions; the identification of political candidates and causes as beneficiaries of the MEA-PAC, and in what amounts; or strategies for optimizing the impact of MEA-PAC participation in political campaigns and causes. Justice HATHAWAY, however, would hold that the plain language of the statute dictates that the administration costs at issue are excluded from the statutory term "expenditure." See *post* at 6. In so asserting, Justice HATHAWAY misinterprets the statute, because the only administrative costs that are excluded under this exclusion are those associated with administering a "separate segregated fund or independent committee." MCL 169.206(2)(c). That the school district is administering a *process* by which payments are *remitted* to such a fund is hardly the equivalent of administering the fund itself, such that the § 6(2)(c) exclusion would apply. Justice HATHAWAY is confused in this regard.[15]

---

[15] Justice HATHAWAY asserts:

> This argument is unfounded and contrary to the plain language of the statute. The plain language of the statute applies to the administration of

19

Third, the school district is not making an "expenditure" for the *solicitation of contributions* to a separate segregated fund or independent committee; rather, the school district is using public resources for processing payments to the MEA-PAC. As discussed earlier, the school district's "expenditure" consists of the use of personnel, office space, computers, software, and other public resources to remit payments to the MEA-PAC. The school district is not, for example, maintaining an advertising campaign on behalf of the MEA-PAC, cold-calling MEA members, or preparing mailers or brochures to enlist contributors. As such, the school district's use of public resources for processing payments to the MEA-PAC cannot be viewed as *soliciting* contributions, but only as facilitating such contributions, an entirely distinct concept. It follows that because the school district's administration of the payroll deduction plan does not fall within any of the three enumerated exclusions set forth in MCL 169.206(2)(c), it is not excluded from the definition of an "expenditure."[16]

---

> *contributions* to a separate segregated fund; the statute does not specify who has to make the contributions. The MEA members' contributions to the MEA-PAC are administered through the payroll deduction system. Thus, the district, by administering the payroll deduction system, is administering contributions to the MEA-PAC, an action that is explicitly allowed according to the plain language of the statute. [*Post* at 6-7.]

This does not make sense. Even if MCL 169.206(2)(c) were not limited to § 55 entities, this provision does not exclude from the definition of "expenditure" an "expenditure" for the "administration of contributions"; rather it excludes an "expenditure" for the administration of a "separate segregated fund or independent committee," which is inapplicable here for the simple reason that the school district is not making an "expenditure" for the administration of a separate segregated fund or independent committee.

[16] Even assuming arguendo that the school district's administration of the payroll deduction plan constitutes "an expenditure for the establishment, administration, or

20

## C. RELEVANCE OF ADVANCE PAYMENTS

Having determined that the school district's administration of the payroll deduction plan that remits payments to the MEA-PAC constitutes both a "contribution" and an "expenditure," the question remains whether the MEA's preparedness to pay in advance the school district's costs associated with the plan remedies what would otherwise constitute a violation of § 57. For the reasons that follow, it does not.

The Court of Appeals correctly held that there is "nothing in the plain language of the MCFA that indicates reimbursement negates something that otherwise constitutes an expenditure." *Mich Ed Ass'n*, 280 Mich App at 486. A court's primary purpose in interpreting a statute is to ascertain and effectuate legislative intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). "Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Omne Fin, Inc v Shacks, Inc*, 460 Mich 305, 311; 596 NW2d 591 (1999) (citations omitted). The Legislature declined to provide that advance payments remedy what would otherwise constitute a violation of § 57.

The suggestion that advance payments remedy a violation of § 57 is belied by the terms of the statute. Section 57 provides that "[a] public body . . . *shall not use or authorize the use*" of public resources to make a "contribution or expenditure . . . ." MCL 169.257(1) (emphasis added). The use of "shall" in a statute generally "indicates a

---

solicitation of contributions to a separate segregated fund or independent committee," which we believe it plainly does not, by its terms, the exclusion only applies to an "expenditure" and not to a "contribution."

mandatory and imperative directive." *Burton v Reed City Hosp Corp*, 471 Mich 745, 752; 691 NW2d 424 (2005) (citations omitted). As such, the statute mandates that the school district not "use or authorize the use of" its public resources to make a "contribution" or an "expenditure." Nothing in MCFA leads to the conclusion that the Legislature intended § 57 to be interpreted any differently. Irrespective of whether the school district is reimbursed for its administration of the payroll deduction plan, the school district nonetheless has employed public resources to make a "contribution or expenditure" for political purposes.[17] The advance payment of expenses simply does not negate what § 57 is intended to prohibit. That is, the gravamen of § 57 is not that a "public body" whose resources have been employed for private political purposes be compensated on a dollar-for-dollar basis, but that public resources not be used for such purposes in the first place. That the costs of dismantling the wall separating government and partisan political campaigning are to be paid by those who desire to use taxpayer resources for partisan political campaigning is not the point of § 57; rather, it is that the wall not be dismantled.[18]

---

[17] Moreover, the advance payment of the school district's *expenses* in administering the deduction plan does not avoid the question of the *extent* to which an exchange of something of "ascertainable monetary value" has taken place. If the school district has provided a service "at cost" to the MEA-PAC, even though the "ascertainable monetary *value*" of that service to the MEA-PAC exceeds that cost, as it almost always will in an economy in which service providers typically seek to profit from their services, further inquiry would be necessary concerning the specific terms of the school district-political action committee transaction, even if such a transaction were permissible in the first place under § 57.

[18] If the MEA-PAC is allowed to commandeer the resources of a "public body" simply by reimbursing its costs, there is nothing that would prevent the political action committee of any corporation from demanding or receiving the same treatment.

22

Furthermore, the unquantifiable cost to the school district, as well as to taxpayers, parents, and students, of having time and resources diverted from the school district's primary responsibilities of administering schools and educating students in order to administer a process of raising political contributions for the MEA-PAC cannot simply be paid in advance or reimbursed. Time is a zero-sum resource, and it is irretrievably lost to taxpayers, parents, and students when it is taken away from the former responsibilities and redirected to the latter responsibilities. If some lesser portion of each day is devoted to the interests of the school district and a greater portion of each day is devoted to the partisan political interests of a labor organization, taxpayers, parents, and students suffer. Although advance payment may recompense the school district its employees' salaries for the time spent on administration of the plan and for the use of supplies and other public resources, monetary reimbursement, paid in advance or otherwise, is simply insufficient to recover the time that is diverted from the primary obligations of the school district.

Moreover, because neither advance payments nor reimbursements prevent the prohibited "use" of public resources from occurring in the first place, the act is punishable as a misdemeanor and subject to a fine that may be "equal to the amount of the improper contribution or expenditure." MCL 169.257(2)(b). The fact that one of the penalties for making an improper "contribution or expenditure" requires the violator to pay an amount that is "equal to the amount of the improper contribution or expenditure" indicates strongly that such a payment, whether in the form of a "penalty" or a "reimbursement," does not transform an improper "contribution or expenditure" into a proper one. Had the Legislature intended otherwise, the misdemeanor statute would

23

more likely have read that the criminal sanction to be paid is "equal to the amount of the improper contribution or expenditure, *less any reimbursement of such contribution or expenditure*."[19]

## V. RESPONSE TO DISSENTS

As discussed previously, Justice HATHAWAY's position that the school district's administration of a payroll deduction plan is not an "expenditure" because the cost of administration is an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee," MCL

---

[19] The MEA also argues with regard to reimbursements that because the school district is reimbursed all costs and expenses, its administration of the deduction plan does not amount to a "contribution or expenditure" given that a "contribution" does not encompass "[a]n offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt," MCL 169.204(3)(c), and an "expenditure" does not include "[a]n offer or tender of an expenditure if expressly and unconditionally rejected or returned," MCL 169.206(2)(e). However, this argument clearly lacks merit because the MEA-PAC's offer to *reimburse expenses* can hardly be said to constitute a "rejection, return, or refund" of a "contribution" or an "expenditure." When the school district collects and remits payments from MEA members to the MEA-PAC, it makes an "offer or tender" of a "contribution or expenditure." To qualify for the "offer or tender" exception, the MEA-PAC would have to unconditionally "reject or return" the services of the school district, something that it neither does nor has any intention of doing. Because the school district's services are unconditionally accepted by the MEA-PAC, the school district's administration of the payroll deduction plan is not excluded from the definition of a "contribution" or an "expenditure" under either section of MCFA. Finally, the obvious should be observed, *to wit*, although the Legislature excluded from the definitions of "contribution" and "expenditure" "an offer or tender" of a "contribution or expenditure" that has been rejected, returned, or refunded, there is no similar exclusion for "reimbursements," an exclusion that should be thought to have been obvious, if genuinely intended. Justice HATHAWAY nonetheless intuits from the "reject or return" exception that "contribution" in MCL 169.204(1) "clearly requires . . . a net transfer of value . . . ." *Post* at 10-11.

24

169.206(2)(c)-- an enumerated exception to the statutory definition of "expenditure"-- lacks merit for two reasons. First, a school district's administration of a payroll deduction plan is not excluded from the definition of an "expenditure" under that section because a "public body," such as a school district, is not authorized to create a separate segregated fund under MCFA and, therefore, may not rely on the § 6(2)(c) exclusion from the definition of an "expenditure." Second, even if a "public body" is entitled to rely on this exclusion, the school district's administration of the payroll deduction plan does not fall within the statutory exception because the school district's "expenditure" cannot be characterized as "[a]n expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee." As also previously discussed, the school district's administration of the payroll deduction system is a prohibited "contribution." However, Justice HATHAWAY reasons that the school district's administration of the payroll deduction plan does not constitute a "contribution." This latter aspect of her opinion warrants further discussion.

(a) In circular fashion, Justice HATHAWAY would hold that the definition of "contribution" encompasses the term "expenditure" and, thus, because the school district's administration of the payroll deduction plan does not constitute an "expenditure," it also cannot be a "contribution." Justice HATHAWAY then states that "[t]he only other way that the administration of the system could be a 'contribution' under the MCFA would be if administering the system resulted in a 'transfer of anything of ascertainable monetary value . . . .'" *Post* at 8. This assertion is erroneous. As discussed earlier, an "in-kind contribution," which is a "contribution . . . other than money," also constitutes a "contribution." MCL 169.209(3). Similarly, MCFA defines

as a "contribution" a "payment." MCL 169.204(1). The school district arguably makes a "payment" to the MEA-PAC when it transfers money from participating MEA members to the MEA-PAC. Although in these circumstances the school district only acts as a conduit, a "contribution" made at the direction of another person "shall be regarded as an expenditure or contribution attributable to both persons for purposes of expenditure or contribution limits." MCL 169.270.[20]

(b) Justice HATHAWAY further errs, in our judgment, as did the former majority opinion, by concluding that her interpretation is necessary to avoid absurd results. In discussing whether the administration of the payroll deduction plan constitutes a "transfer of anything of ascertainable monetary value" and thus a "contribution," Justice HATHAWAY states:

> There are two possible interpretations of the word "transfer" in the statute. The first interpretation would require that any conveyance of value for services provided to a campaign, regardless of whether the services are paid for, would constitute a contribution. The second would require a net conveyance of value in order to be a "transfer of anything of ascertainable monetary value." I believe that the latter is the only logical interpretation.

---

[20] Justice CAVANAGH asserts that MCL 169.270 does not apply in this case "because an MEA member is not seeking to circumvent the MCFA's contribution limits," *post* at 8. However, MCL 169.270 contains no subjective component. That is, regardless of whether any MEA member has a desire to "circumvent" MCFA's contribution limits, a "contribution or expenditure which is controlled by, or made at the direction of, another person . . . shall be regarded as an expenditure or contribution attributable to both persons for purposes of expenditure or contribution limits." MCL 169.270. Because the statute is applicable, and because a public body is absolutely prohibited from making a "contribution" for political purposes under MCL 169.257(1), the only logical inference is that the "contribution limit" for a public body is *zero*. Therefore, when the school district facilitates an MEA member's "contribution" and that "contribution" is attributable to the school district pursuant to MCL 169.270, the school district as a public body has surpassed its "contribution limit."

Any other interpretation of "contribution" would lead to an absurd result, and statutes must be construed to prevent absurd results. For example, under the majority's interpretation, a print shop that sells signage to a campaign in the normal course of business would be making a contribution to the campaign because it has transferred something of monetary value to the campaign, even though the shop has been compensated for the cost of providing the signage. Such an interpretation of "contribution" defies common sense, and I do not read the statute in this manner. [*Post* at 9-10 (citations omitted).]

By emphasizing that her interpretation is necessary to avoid "absurd results," Justice HATHAWAY appears to concede that the more natural interpretation of the law is that asserted by this majority opinion. Resort to an "absurd results" analysis is generally necessary only to avoid an interpretation that would otherwise flow from a statute by the application of traditional principles of interpretation.

In essence, Justice HATHAWAY believes that it is necessary to read MCL 169.204(1) as if it referred to a "*net* transfer of anything of ascertainable monetary value," which it does not, in order to avoid the allegedly "absurd result" to which our interpretation of MCL 169.204(1) would lead. What is this allegedly "absurd result"? What is this result that is "quite impossible that [the Legislature] could have intended"? *Pub Citizen v United States Dep't of Justice*, 491 US 440, 471; 109 S Ct 2558; 105 L Ed 2d 377 (1989) (Kennedy, J., concurring). What is this result that is "unthinkable" or "bizarre"? *Green v Bock Laundry Machine Co*, 490 US 504, 527; 109 S Ct 1981; 104 L Ed 2d 557 (1989) (Scalia, J., concurring). What is this result that "cannot rationally . . . mean" what it seems to mean? *Id*. at 528.[21] That there be no exchanges of value between

---

[21] Although I continue to abide by an "absurd results" rule-- albeit a vastly different "absurd results" rule than that of the dissenting justices-- Chief Justice YOUNG, who joins this opinion, does not. See *People v McIntire*, 461 Mich 147, 152-160; 599 NW2d 102

a "public body" and a partisan political action committee? That the government not further the partisan interests of a political action committee? That taxpayer resources not be employed to collect, and facilitate, partisan political contributions? While these results may be "absurd" to the dissenting justices, we do not find them to be "absurd" at all. Once again, the dissenting justices seem to equate an absurd result with a disagreeable result. *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 84-86; 718 NW2d 784 (2006) (MARKMAN, J., concurring); *Petersen v Magna Corp*, 484 Mich 300, 370; 773 NW2d 564 (2009) (MARKMAN, J., dissenting). Furthermore, the specific "absurd result" alleged here by Justice HATHAWAY, that a print shop could not sell signs to a campaign because this would constitute a "contribution," is itself absurd. A print shop is not a "public body" and therefore, unlike a school district, is not regulated by § 57 of MCFA.

(c) The former majority opinion also erred when it concluded that MCL 408.477 of the wages and fringe benefits act provides authority for the school district to administer the payroll deduction plan.[22] *Mich Ed Ass'n*, 488 Mich at 38 n 29. "[S]chool

---

(1999); cf. *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 78-80, 84-86; 718 NW2d 784 (2006) (MARKMAN, J., concurring).

[22] We recognize that this argument is now absent from Justice HATHAWAY's dissenting opinion. Nonetheless, it is a part of the former majority opinion under reconsideration today. Apparently, § 7 of the wages and fringe benefits act, MCL 408.477, provided authority for the school district to administer the payroll deduction plan on December 29, 2010, but not any longer. Given that Justice HATHAWAY now seems to agree with the majority that the wages and fringe benefits act does not provide authority for the district to administer the deduction plan, does she now have an alternative analysis concerning from where this authority derives?

districts and school officers have only such powers as the statutes expressly or impliedly grant to them." *Jacox v Van Buren Consol Sch Dist Bd of Ed*, 293 Mich 126, 128; 291 NW 247 (1940). "'The extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority.'" *Sittler v Mich College of Mining & Technology Bd of Control*, 333 Mich 681, 687; 53 NW2d 681 (1952) (citation omitted). Contrary to the former majority opinion, the authority to administer a payroll deduction plan for a political action committee is not expressly or impliedly granted to schools by any statute.

While MCL 408.477 of the wages and fringe benefits act refers to payroll deductions, it does not authorize school districts to administer payroll deductions *for political action committees*. MCL 408.477(1) provides in full:

> Except for those deductions required or expressly permitted by law or by a collective bargaining agreement, an employer shall not deduct from the wages of an employee, directly or indirectly, any amount including an employee contribution to a separate segregated fund established by a corporation or labor organization under section 55 of the Michigan

On this note, Justice CAVANAGH asserts that when MCL 408.477(1) and MCL 423.209, which grants authority for public employees to engage in collective bargaining, are "considered in tandem," they "'expressly or impliedly grant' school districts the authority to enter collective-bargaining agreements that require a school district to administer a payroll deduction plan." *Post* at 10. But this analysis is flawed. We have no doubt that school districts have the authority to engage in collective bargaining, and also the authority to administer certain types of payroll deduction plans. However, that authority is limited to "engag[ing] in *lawful* concerted activities . . . ." MCL 423.209 (emphasis added). The collective-bargaining agreement in this case required the district to engage in an activity in violation of MCL 169.257 and thus cannot serve as the source of authority to make a "contribution or expenditure." By contrast, we have no doubt that a school district has the authority under the law to administer 401(k) contributions, social security and Medicare deductions, and payroll deductions for the payment of union dues and service fees.

campaign finance act, Act No. 388 of the Public Acts of 1976, being section 169.255 of the Michigan Compiled Laws, without the full, free, and written consent of the employee, obtained without intimidation or fear of discharge for refusal to permit the deduction.[23]

From this provision, the former majority opinion summarily concluded that, "under the plain language of MCL 408.477, public bodies have the authority to administer a payroll deduction plan that contributes money to the MEA-PAC if the MEA enters into a collective bargaining agreement that expressly permits the deductions." *Mich Ed Ass'n*, 488 Mich at 38 n 29. This is another example of the former majority opinion's misinterpretation of a statute. MCL 408.477 has absolutely nothing to do with whether a "public body" may administer a payroll deduction plan for the benefit of the MEA-PAC. Rather, the statute describes the approval required for an employer to deduct a portion of an employee's wages and states that in order to deduct wages from an employee, the employer must obtain the employee's voluntary consent. The statute also provides that such consent is not required when the wage deduction is expressly permitted by law or by a collective-bargaining agreement. The most that can be discerned from this statute as it pertains to the instant case is that, if the school district is to deduct wages from its employees, it must obtain the employees' voluntary consent unless the deduction is expressly permitted by law or a collective-bargaining agreement. However, neither MCL 408.477 nor any other statute provides *authority* for a "public body" to administer a payroll deduction plan that contributes money to a *political action committee*. Therefore, even if the school district's administration of a payroll deduction plan did not constitute a

---

[23] See also MCL 169.255(6) (regulating the manner in which contributions for a separate segregated fund may be obtained).

30

"contribution" or an "expenditure," which it clearly does, the school district would still lack the *authority* to administer such a plan because no statute gives the school district this authority and the school district only has the authority granted to it by statute. Indeed, as explained earlier, the Legislature has affirmatively and expressly forbidden a school district, or any other public body, from making a "contribution or expenditure" to a political action committee.

## VI.  JUSTIFICATION FOR REHEARING

The dissenting justices assert, explicitly or implicitly, that this opinion undoes their opinion of December 29, 2010, upon rehearing without offering any new justification for doing so other than the views expressed in the dissent from that opinion. See *post* at 1 (HATHAWAY, J., dissenting), and *post* at 1 n 1 (CAVANAGH, J., dissenting). For the benefit of the dissenting justices, we will attempt to provide this justification.

First, contrary to Justice HATHAWAY's assertion, we respectfully disagree that the previous majority opinion "followed the language of the law."  *Post* at 2.  Indeed, we believe that opinion to have interpreted MCFA in a manner that bore little resemblance to its actual language.  The previous majority opinion (a) effectively inserted words into the law that are absent from the law, e.g., construing the "transfer of anything of ascertainable monetary value," to require that there be a "transfer of anything of *net* ascertainable monetary value," see *Mich Ed Ass'n*, 488 Mich at 36, (b) effectively altered words in the law, e.g., substituting for "ascertainable monetary value" "*ascertained*" monetary value, *id*. at 37, (c) applied the facts to the law in an implausible fashion, e.g., asserting that the administration of the payroll deduction plan was not done for the "'purpose of influencing the nomination or election of a candidate, or for the

31

qualification, passage, or defeat of a ballot question,'" *id.*, quoting MCL 169.204(1), (d) mischaracterized the facts, e.g., asserting that the administration of the payroll deduction plan by the school constituted no "transfer of ascertainable monetary value" to the MEA-PAC but "merely allow[ed] *someone else* to make a contribution," *Mich Ed Ass'n*, 488 Mich at 37, (e) failed to analyze relevant and determinative provisions of the law, e.g., the definition of an "in-kind contribution," (f) paraphrased the law in an imprecise manner, e.g., summarizing an exception to the law's broad prohibition that is applicable to the administration of a separate segregated fund or independent committee as one applicable to the administration of contributions, *id.* at 29-30, and (g) overlooked words of the law, e.g., asserting that because the administration of the payroll deduction plan does not constitute an "expenditure," the "only other way" that it could constitute a "'contribution'" would be if a "'transfer of anything of ascertainable monetary value'" resulted, *id.* at 34, quoting MCL 169.204(1), despite the fact that MCFA defines a "contribution" in other ways to include "a payment" or an "in-kind contribution."

Second, while the dissenting opinions make light of the fact that we supposedly have little justification for this new opinion other than the views expressed in the dissent from the original opinion, we believe that such a justification is actually rather compelling. That is, we believe that the previous dissent was in accordance with the language and intent of MCFA, while the previous majority opinion was not,[24] and as

---

[24] Justice CAVANAGH claims that we fail to "realize that [his] interpretation of the MCFA is consistent" with the purpose of MCL 169.257. *Post* at 16. This is a rather remarkable proposition. If the purpose of MCL 169.257 is, as we believe it to be, to mandate the separation of the government from politics, then it would seem that Justice CAVANAGH's interpretation, which *permits* the use of public resources in support of partisan political

32

between an analysis of the law that is in accordance with its language and intent and one that is not, we prefer the former.

Third, we "justify" granting the motion for rehearing, and reconsidering our previous decision, because we believe that the issue before the Court is one of considerable importance to the people of this state and to the integrity of the state's political and public processes. Through MCFA, the people have sought to maintain a separation of politics and the government in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. The previous majority opinion, and the present dissenting opinions, would dismantle this separation. They would increasingly involve the taxpayer in the subsidization of partisan political activities and increasingly erode the neutrality of public institutions in these same activities. While the dissenting justices seem very little moved by these concerns, we believe that they are substantial. It should be a matter of great pride to the people of Michigan that its history, with very few exceptions, has been a history characterized by electoral fair play and an honest political process. Both parties, and their supporters, can take credit for this history. We believe that the people of this state understand well the importance to this history of a legal system in which parties and political action committees cannot commandeer taxpayer resources and in which government cannot place a thumb on the scale concerning who will prevail in the political process. In short, we believe that the people understand well,

_____

activity, is the antithesis of that purpose. That is, MCL 169.257 prohibits the use of public resources in aid of partisan political activity, and Justice CAVANAGH's interpretation permits it.

33

for it is at the root of MCFA, that to breach these principles is incompatible with a government that is "instituted for . . . [the] *equal* benefit . . . and protection" of the people. Const 1963, art 1, § 1.

Finally, we believe that the former majority's remarkable treatment of this case itself constitutes grounds for granting rehearing. This case was alternately subject to unprecedentedly *dilatory* treatment and unprecedentedly *accelerated* treatment. See *Mich Ed Ass'n*, 488 Mich at 64-68 (MARKMAN, J., dissenting). Before this case was heard in November of last year, it was subject to the lengthiest delay, by far, of any of the 280 cases considered under the procedures of MCR 7.302(H)(1), which authorize this Court to order oral argument before deciding whether to grant leave to appeal. See also n 4 of this opinion. Subsequently, after finally granting leave to appeal and hearing oral arguments, a majority opinion was prepared in near-record time, the period for dissenting justices to respond to this opinion was substantially shortened, and, in December, these opinions issued in what approached, if not exceeded, record time for a major decision of this Court.

## VII. CONCLUSION

MCL 169.257 prohibits a "public body" from using public resources to make a "contribution or expenditure" for political purposes. Through administration of the payroll deduction plan in this case, remitting payments to the MEA-PAC, the school district makes both a "contribution" and an "expenditure" as defined by MCFA. The MEA-PAC's offer to reimburse the school district for expenses incurred in its administration of the plan does not remedy an otherwise clear violation of MCL 169.257. This interpretation is consistent not only with the language of the statute, but also with

34

the evident purpose of MCL 169.257, which is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities. The payroll deduction plan in this case is inconsistent with this legislative purpose and inconsistent with the language of the law. Accordingly, the judgment of the Court of Appeals is affirmed.

Stephen J. Markman
Robert P. Young, Jr.
Mary Beth Kelly
Brian K. Zahra

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN EDUCATION
ASSOCIATION,

       Petitioner-Appellant,

v                                   No. 137451

SECRETARY OF STATE,

       Respondent-Appellee.

_____

MARY BETH KELLY, J. (*concurring*).

I concur in Justice MARKMAN's opinion granting the motion for rehearing, vacating this Court's opinion of December 29, 2010, and affirming the Court of Appeals' judgment of August 28, 2008. I write separately to emphasize, once again, that granting a rehearing motion is not limited to cases in which new legal arguments were presented to the Court and to clarify that this is not a case in which it can fairly be said that "precedent" has been disturbed.

As Justice ZAHRA recently explained in detail in *Anglers of the AuSable, Inc v Dep't of Environmental Quality*,[1] MCR 7.313(E) governs motions for rehearing in this Court. It is a discretionary rule because it does not contain a standard governing when we should grant a motion for rehearing.[2] The rule does not limit our discretion to grant

---

[1] *Anglers of the AuSable, Inc v Dep't of Environmental Quality*, 489 Mich 884, 885 (2011) (ZAHRA, J., concurring).

[2] *Id*. at 885-886.

rehearing to only those cases in which a party has presented new legal arguments.[3]  The rule's lack of any language limiting our discretion supports the principle that, in addressing a motion for rehearing, it is appropriate for each justice to individually determine whether this Court properly interpreted and applied the law in the case before the Court for rehearing.[4]  As Justice ZAHRA observed in *Anglers*, other members of this Court have voted to grant rehearing and overturn precedent, applying this principle, albeit without explicit recognition of the discretion afforded by the rule.[5]

I also share the view articulated by Justice ZAHRA in *Anglers* that in addition to considering whether the matter was previously decided correctly under the governing legal principles, the jurisprudential significance of the legal issues presented should also be considered when deciding a motion for rehearing.[6]  It is only with careful review of this Court's prior rulings that I approach a decision on a motion for rehearing.

In this case I agree, first, with the legal analysis of the provisions of the Michigan Campaign Finance Act (MCFA)[7] at issue set forth in Justice MARKMAN's opinion.  The public school district's administration of the payroll deduction plan is both a "contribution" and an "expenditure" for political purposes under the MCFA, which

---

[3] *Id.* at 887.

[4] See *id*.

[5] *Id.* at 888, citing *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1; 795 NW2d 101 (2010); *Duncan v Michigan*, 488 Mich 957 (2010) (DAVIS, J., concurring); *McCready v Hoffius*, 459 Mich 1235 (1999).

[6] See *Anglers*, 489 Mich at 889.

[7] MCL 169.201 *et seq.*

2

violates MCL 169.257(1). Justice HATHAWAY's position that "nothing in the plain language of MCL 169.257(1) prohibits a school district from administering a payroll deduction system that allows [MEA] members to automatically send contributions to the . . . MEA-PAC"[8] misconstrues the MCFA.

Second, this case plainly involves issues of substantial jurisprudential importance to our state. This case concerns "the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from . . . subsidiz[ing] partisan political activities."[9] The legality of the administration of the payroll deduction plan is of considerable public interest given that the plan would have essentially allowed taxpayers to help fund a political action committee. Moreover, the case involved an issue of first impression that is not likely to reappear before the Court on a regular basis. Through the MCFA, the Legislature intended to keep public resources out of the political process, and the statute could not make this plainer.

Notably, the grant of the rehearing motion, which was timely filed, asked the Court to rehear a case that was decided several days before I was sworn in and after the case had pended for more than two years in our Court.[10] To the extent that this case may

---

[8] *Post* at 1.

[9] *Ante* at 35.

[10] The Court of Appeals issued its opinion in this case on August 28, 2008. The MEA applied for leave to appeal on October 8, 2008. On May 8, 2009, this Court ordered oral argument on the application. Nearly six months later, on November 5, 2009, this Court heard oral argument on the application. Approximately seven months later, on June 4, 2010, this Court granted the MEA's application for leave to appeal. Then, three days

3

be deemed to be precedent, its precedential value is *de minimis*, at best. As noted by Justice MARILYN KELLY in *Petersen v Magna Corp*, "[s]tare decisis attempts to balance two competing considerations: the need of the community for stability in legal rules and decisions and the need of courts to correct past errors."[11] In *Robinson v Detroit*,[12] this Court set forth four factors to be considered before this Court overrules a previously decided case. The purpose of enunciating these factors was to ensure that respectful consideration would be given to the cases decided by our predecessors before such cases are overruled. "The first question, of course, should be whether the earlier decision was wrongly decided."[13] Consistently with Justice MARILYN KELLY's explanation in *Petersen*[14] of the competing considerations that the doctrine of stare decisis attempts to reconcile, the remaining three factors balance the need to correct error against the desire for stability and reliability in the law. Specifically, the Court observed that it should also review "whether the decision at issue defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision."[15] When a case is considered on rehearing, none

---

before the composition of the Court was set to change, the prior majority entered an opinion on December 29, 2010, more than two years after the MEA applied for leave to appeal.

[11] *Petersen v Magna Corp*, 484 Mich 300, 314; 773 NW2d 564 (2009).

[12] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

[13] *Id.* at 464.

[14] *Petersen*, 484 Mich at 314.

[15] *Robinson*, 462 Mich at 464 (citation omitted).

4

of the *Robinson* factors outweighs the need to issue a legally correct opinion. No reasonable legal reliance can be placed on an opinion that has not yet ended its procedural course, however extended, in our Court. The opinion at issue was only days old when the composition of the Court changed. The rehearing motion, timely filed, necessarily required adjudication by the newly composed Court. As a justice of the Court who had not before considered the merits of the underlying claim, it is my constitutional duty to address the legal merits of the issues presented. Simply put, I would be derelict in my duty if I were to give deference to legal reasoning with which I find fault. On rehearing, this case rises or falls on the merits of the legal claim. Blind allegiance to the notion of stare decisis is not appropriate and is a wholly unpersuasive rationale for allowing a days-old decision to stand.

In sum, rehearing was warranted in this case because, in my view, the MCFA plainly requires holding that the public school district's administration of the payroll deduction plan is both an "expenditure" and a "contribution" that violates the act and the issue was both properly before the Court for rehearing and a matter of substantial jurisprudential significance to our state.

Mary Beth Kelly
Brian K. Zahra

5

STATE OF MICHIGAN

SUPREME COURT

MICHIGAN EDUCATION ASSOCIATION,

        Petitioner-Appellant,

v

SECRETARY OF STATE,

        Respondent-Appellee.

No. 137451

---

CAVANAGH, J. (*dissenting*).

I disagree with the current majority's decision to grant respondent's motion for rehearing and vacate this Court's December 29, 2010, majority opinion. *Mich Ed Ass'n v Secretary of State*, 488 Mich 18; 793 NW2d 568 (2010).[1] Furthermore, I disagree with the current majority's substantive analysis in this case because, in my view, the school district's administration of the payroll deduction plan at issue is neither a "contribution" nor an "expenditure" as defined in the Michigan Campaign Finance Act (MCFA); therefore, the school district's administration of the plan is not prohibited by MCL 169.257(1). Accordingly, I respectfully dissent.

---

[1] As I explained in my dissenting statement in *Anglers of the AuSable, Inc v Dep't of Environmental Quality*, 489 Mich 884, 891 n 1 (2011), the court rules and this Court's internal operating procedures imply that MCR 2.119(F)(3) should factor into this Court's consideration of motions for rehearing. Accordingly, because respondent presents no new arguments in support of her motion for rehearing and the previous majority opinion reached the right result for the reasons discussed in this opinion, I would deny respondent's motion for rehearing.

## I.  STANDARD OF REVIEW

The proper interpretation of a statute is a legal question that this Court reviews de novo.  *Herman v Berrien Co*, 481 Mich 352, 358; 750 NW2d 570 (2008).

## II.  ANALYSIS

The MCFA's general rule regarding prohibited "contributions" and "expenditures" is provided in MCL 169.254(1), which states in relevant part:

> Except with respect to the exceptions and conditions in . . . [MCL 169.255], and to loans made in the ordinary course of business, a corporation, joint stock company, domestic dependent sovereign, or labor organization shall not make a contribution or expenditure . . . .

Thus, according to the plain language of MCL 169.254(1), MCL 169.255 is an exception to the general rule in MCL 169.254(1).  That exception states, in relevant part:

> A corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.  [MCL 169.255(1).]

Finally, MCL 169.257(1) specifically addresses how the MCFA applies to "public bodies," which includes school districts,[2] when it states:

> A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources to make a contribution or expenditure . . . .

---

[2] MCL 169.211(6)(c).

2

Thus, under MCL 169.254(1) and MCL 169.257(1), private entities and "public bodies" are barred from making "contributions" and "expenditures" unless an exception applies. The MCFA provides detailed definitions of "contribution" and "expenditure"; therefore, in order to properly apply the relevant portions of the MCFA to the facts of this case, it is necessary to closely consider those statutory definitions to fully understand what constitutes a prohibited "contribution" and "expenditure" as defined in the MCFA.

### A. "CONTRIBUTION"

The MCFA defines "contribution" in MCL 169.204(1), which states:

> "Contribution" means a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person, made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question.[3]

This statutory definition can be divided into two portions: (1) a list of actions that could constitute a "contribution," i.e., "a payment, gift, subscription, assessment, expenditure, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, or a transfer of anything of ascertainable monetary value to a person," and (2) the purpose for which the actions must be taken in order to constitute a "contribution," i.e., "for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."

---

[3] The MCFA also provides a list of exclusions from its definition of "contribution." See MCL 169.204(3)(a) through (c). It is not necessary to consider those exclusions in this case, however, because the plain language of the statutory definition of "contribution" does not encompass the school district's administration of the payroll deduction plan at issue here.

Stated another way, the statutory definition requires a court to determine (1) whether a party's conduct falls within the list of actions provided and, if so, (2) the purpose for that action.

As the majority insists, the list of actions provided in the first portion of the definition of "contribution" arguably could include the school district's administration of the payroll deduction plan. But even accepting arguendo the majority's conclusion that the administration of the plan represents "a transfer of [something] of ascertainable monetary value" to the MEA's political action committee (MEA-PAC), the question remains whether the school district administers the plan "for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."

As the previous majority opinion in this case explained,

> a public school's administration of a payroll deduction system is not an impermissible contribution under the MCFA because the system is not administered "for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." When a public body administers a payroll deduction plan, it does not do so in an attempt to influence a political race or a ballot question. Rather, administering the plan is one step removed: it merely allows *someone else* to make a contribution for the purpose of influencing a political issue. The public body administers the plan simply because it is required to do so as part of a labor contract between the public body and its employees. Consequently, because a public school's administration of a payroll deduction system is not done for the purpose of influencing a political issue, the administration of the system is not a contribution under the MCFA. [*Mich Ed Ass'n v Secretary of State*, 488 Mich at 37-38 (citation omitted).]

The majority attempts to counter the previous majority's explanation of the plain meaning of the MCFA's definition of "contribution" by first claiming that the school

4

district makes a "contribution" because, by administering the payroll deduction plan, it "provid[es] valuable services to the MEA-PAC in aid and furtherance of its political activities." *Ante* at 13 n 12. This analysis, however, impermissibly strays from the statutory language because it focuses on the arguable *result* of the school district's administration of the plan rather than the school district's *purpose* in administering the plan, as the statute requires. The fact that, at some remote time in the future, the school district's administration of the payroll deduction plan eventually *results* in the furtherance of the MEA's political activities does not necessarily make the school district's actions a "contribution" as defined in MCL 169.204(1). Rather, the administration of the payroll deduction plan is only a "contribution" if, at the time the school district performs the service, it does so "for the purpose" of influencing an election.

Second, the majority argues that, in considering the school district's administration of the payroll deduction plan under MCL 169.204(1), the focus should not be on whether the school district is attempting to influence a political race, but whether the payment that it provides is intended for that purpose. While the majority is correct to focus on the "payment," the majority confuses the two payments at issue in this case: the MEA member's "payment" in the form of money deducted from his or her paycheck and the school district's arguable "payment" in the form of administering the payroll deduction plan that transfers the employee's donation to the MEA-PAC.[4] While the employee's

---

[4] The majority further confuses the two payments at issue with its discussion of the definition of the word "make." Contrary to the majority's claims, when the school district administers the payroll deduction plan, it does not "'cause[] to exist or happen' 'contributions' from MEA members . . . ." *Ante* at 9. Rather, *the MEA member* "causes to exist or happen" the "contribution" when the MEA member voluntarily chooses to

5

donation to the MEA-PAC is likely a "contribution" because it is made "for the purpose" of influencing a political race, the majority erroneously imputes the employee's purpose in making the contribution to the school district. It is not the purpose behind the employee's donation that is the focus of the relevant inquiry; rather, it is the purpose behind the school district's decision to administer the payroll deduction plan, which merely transfers donations from the employee to the MEA-PAC, that must be considered. Similarly, the majority erroneously imputes *the MEA's* purpose in collecting contributions to the school district's administration of the payroll deduction plan. See *ante* at 12 (claiming that the school district's administration of the payroll deduction plan is a "contribution" because "the purpose of the MEA-PAC is to facilitate and coordinate the involvement of the MEA in partisan politics"). What the majority fails to grasp is that, when properly applied to this case, MCL 169.204(1) is focused solely on *the school district's* purpose in acting in a specific fashion.

In order to determine the school district's "purpose," one must first define the word and then apply that definition to the facts of this case. The MCFA does not define "purpose"; therefore, it is proper to consult a dictionary to assist the Court in determining the word's common meaning. *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010); see, also, MCL 8.3a. "Purpose" is defined as "[a] result or effect that is *intended*

---

donate to the MEA-PAC. The school district merely transfers money from one place to another. Just as a bank, acting in response to a check written by a customer, does not "make" a payment when it transfers money from the customer's account to the party identified on the check, the school district does not "make" a contribution when it transfers money from a MEA member's paycheck to the MEA-PAC at the MEA member's direction.

6

or desired; *intention.*"  *The American Heritage Dictionary*, *Second College Edition* (1982), def 2 (emphasis added).  Thus, in order to determine the school district's purpose for administering the payroll deduction plan, one must consider the school district's *intent*.  "Intent," in turn, is defined as "[t]he state of mind operative at the time of an action. . . . [h]aving the mind fastened upon some purpose."  *Id.*, defs 2 and 3.  Similarly, "intention" is defined as "[a] plan of action; design" and "[a]n aim that guides action . . . ."  *Id.*, defs 1 and 2.  In light of these definitions, in order to determine the school district's purpose as it relates to the statutory definition of "contribution," one must determine the school district's "aim that guides [its] action" and the "state of mind operative" when the school district administers the payroll deduction plan.

As the majority notes, the school district and the MEA entered into a collective-bargaining agreement, part of which required the school district to administer the payroll deduction plan at issue in this case.  Because the school district is required by contract to administer the payroll deduction plan, the school district's purpose in administering the plan is to satisfy its bargained-for contractual duties.  The school district's purpose was *not* to "influenc[e] the nomination or election of a candidate" or "the qualification, passage, or defeat of a ballot question."  MCL 169.204(1).  Therefore, although the school district's administration of the payroll deduction plan may, in some tangential or remote sense, eventually influence an election, that was not the school district's purpose.  Consequently, the school district's administration of the payroll deduction plan is not a "contribution" as defined by the MCFA.

7

The majority also attempts to support its "contribution" analysis with a quotation from MCL 169.270.[5] *Ante* at 26. But, in my view, that statute is intended to prevent an entity from circumventing the contribution limits in MCL 169.252 and MCL 169.252a by transferring money to other entities and then directing those entities to make "contributions" or directing another entity to use its own resources to make a "contribution." Indeed, the statute expressly states that it applies "for purposes of expenditure and contribution *limits*." MCL 169.270. Thus, contrary to the majority's interpretation, the statute is focused on enforcing contribution limits, not determining whether a particular act is a "contribution" or "expenditure" as defined in MCL 169.204 and MCL 169.206. Notably, because an MEA member is not seeking to circumvent the MCFA's contribution limits by making a contribution through the payroll deduction plan, MCL 169.270 is not applicable to the school district in this case. The MEA member does not "control" a "contribution" made by the school district or "direct" the school district to make a contribution from the school district's own funds. Rather, the MEA member makes a contribution out of his or her own funds, and the school district merely transfers those funds. Throughout the entire transaction, the contribution is always attributable to the MEA member.

---

[5] MCL 169.270 states:

> A contribution or expenditure which is controlled by, or made at the direction of, another person, including a parent organization, subsidiary, division, committee, department, branch, or local unit of a person, shall be reported by the person making the expenditure or contribution, and shall be regarded as an expenditure or contribution attributable to both persons for purposes of expenditure or contribution limits.

Furthermore, by claiming that the school district exceeds its inferential contribution limit of zero when it administers the payroll deduction plan, the majority once again improperly imputes to the school district the MEA member's purpose for making the contribution. As this opinion explains, an act is not a "contribution" as defined in MCL 169.204(1) unless the act is performed for the specific purpose of "influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question." Because the school district's administration of the payroll deduction plan is not performed for that purpose, the school district does not make a "contribution" and, thus, does not exceed any arguably applicable contribution limit.[6]

Finally, the majority questions the school district's authority to administer the payroll deduction plan at issue in this case. However, this concern is misplaced because school districts, by statute, have the authority to enter into collective-bargaining agreements, MCL 423.209,[7] and school districts may administer a payroll deduction plan

---

[6] The majority also argues that, under MCL 169.209(3), the school district's administration of the payroll deduction plan is an "in-kind contribution" because the administration of the plan is a "contribution . . . other than money." But, as the majority seems to accept, under the plain language of MCL 169.209(3), the school district's administration of the payroll deduction plan cannot be an "in-kind contribution" unless it is a "contribution" as defined in MCL 169.204(1). Thus, because I believe that the school district's administration of the payroll deduction plan is not a "contribution" for the reasons previously provided, it is also not an "in-kind contribution."

[7] MCL 423.209 states:

> It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representatives of their own free choice.

9

as part of a collective-bargaining agreement pursuant to the wages and fringe benefits act, specifically MCL 408.477(1). Thus, in the abstract, the majority's argument that the wages and fringe benefits act does not directly grant school districts the authority to administer a payroll deduction plan is correct, but the majority errs when it concludes that the wages and fringe benefits act is irrelevant to this case. Rather, when that act is considered in tandem with MCL 423.209, the statutes "expressly or impliedly grant" school districts the authority to enter collective-bargaining agreements that require a school district to administer a payroll deduction plan. *Jacox v Van Buren Consol Sch Dist Bd of Ed*, 293 Mich 126, 128; 291 NW 247 (1940). Because the school district's administration of the payroll deduction plan is neither a "contribution" nor an "expenditure" for the reasons discussed in this dissent, administration of the plan does not violate MCL 169.257 and, thus, is lawful.

## B. "EXPENDITURE"

Although the school district's administration of the payroll deduction plan is not a prohibited "contribution," it could nevertheless be barred under MCL 169.257 if it meets the statutory definition of "expenditure." Therefore, that definition must also be examined in the context of this case. The MCFA defines "expenditure" in MCL 169.206(1), which states, in relevant part:

> "Expenditure" means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the

---

See, also, MCL 423.217(1) (protecting collective-bargaining agreements of public school employees).

10

nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. Expenditure includes, but is not limited to, any of the following:

(a) A contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question.

The MCFA, however, also expressly excludes some conduct that would otherwise meet its general definition of "expenditure." Notably, MCL 169.206(2) states, in relevant part:

Expenditure does not include any of the following:

* * *

(c) An expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee.

The majority argues that the school district's administration of the payroll deduction plan is barred by the MCFA because it is an "expenditure" under the general definition in MCL 169.206(1) and the exclusion in MCL 169.206(2)(c) does not apply to public bodies. The majority concludes that the "exclusion is clearly designed to apply only to corporations and labor organizations that possess the authority to create, establish, administer, or fund separate segregated funds in the first place." *Ante* at 15. Furthermore, the majority claims that MCL 169.257 and MCL 169.254 apply to public bodies and private entities respectively the same general rule barring "expenditures," but, because MCL 169.257 does not refer to the exception in MCL 169.255 permitting some types of "expenditures," MCL 169.257 represents an "absolute prohibition" against expenditures by public bodies. I disagree with the majority's analysis.

To begin with, contrary to the majority's suggestion, neither the general definition of "expenditure" in MCL 169.206(1) nor the exclusion from the general definition in

11

MCL 169.206(2)(c) indicates that the exclusion only applies to private entities.  Thus, there is simply no basis in the statutory language to support the majority's position.

Likewise, nothing in MCL 169.257 supports the majority's conclusion that the exclusion in MCL 169.206(2)(c) from the definition of "expenditure" does not apply to public bodies.  While the majority is correct that the exceptions in MCL 169.255 do not apply to public bodies, that fact does not support the majority's conclusion that the exclusion in MCL 169.206(2)(c) also does not apply with equal force to public bodies.  In fact, the majority's claim that this exclusion is "plainly directed toward elaborating on [MCL 169.255] by making clear that no expenditures authorized by [MCL 169.255] for the establishment of a separate segregated fund will be treated as a prohibited expenditure," *ante* at 16 n 13, leaves no distinction between the two statutes.  Therefore, if the majority were correct that MCL 169.206(2)(c) does not apply to public bodies, MCL 169.206(2)(c) is completely unnecessary because, under the majority's interpretation, it says the exact same thing as MCL 169.255.  The majority's efforts to read these two statutes "harmonious[ly]" are strained and renders MCL 169.206(2)(c) superfluous.  I decline to adopt such an interpretation because the result is impermissible under the rules of statutory interpretation.  *People v McGraw*, 484 Mich 120, 126; 771 NW2d 655 (2009) ("In interpreting a statute, we avoid a construction that would render part of the statute surplusage or nugatory.").

Rather, I believe that MCL 169.257 explains that public bodies are not to make "expenditures" as defined in MCL 169.206(1), but if the school district's administration of the payroll deduction plan satisfies the exclusion from the definition of "expenditure" found in MCL 169.206(2)(c) administration of the plan is not an "expenditure," and the

12

plan does not violate MCL 169.257. Thus, in a sense, the majority is correct that MCL 169.257 creates an "absolute prohibition" against expenditures by public bodies, but the majority misses the boat when it concludes that this "absolute prohibition" bars the school district's administration of the payroll deduction plan at issue in this case. Because the school district's administration of the plan is excluded from the definition of "expenditure," there is simply no "expenditure" to prohibit.[8]

The majority's erroneous analysis further results from its insistence that the exclusion in MCL 169.206(2)(c) only applies to expenditures for the establishment or administration *of a separate segregated fund*. This interpretation of MCL 169.206(2)(c) is misguided because the statutory exclusion focuses on expenditures associated with *contributions* to a separate segregated fund, not expenditures associated with the *creation* or *management* of a separate segregated fund.

Specifically, MCL 169.206(2)(c) provides that an "expenditure" does not include "[a]n expenditure for the establishment, administration, or solicitation *of contributions to a separate segregated fund . . . .*" The majority errs because it replaces "to" with "of" and ignores the word "contributions" when considering "establishment" and

---

[8] Contrary to the majority's claims, my interpretation does not permit political action committees to "commandeer[]" government resources. *Ante* at 16 n 13. Obviously, a public body is always free to decline the MEA's or any other organization's request to engage in a plan like the one at issue in this case. Indeed, the school district in this case freely agreed to administer the payroll deduction plan as part of the arm's-length negotiations with the MEA that culminated in a collective-bargaining agreement. Thus, the MEA did not "commandeer" anything. Furthermore, my interpretation would not "always" lead to the same result. *Ante* at 16 n 13. Rather, a public body would only be permitted to engage in the limited conduct excluded from the definition of "expenditure" when the specific requirements of MCL 169.206(2)(c) are met.

"administration" as used in MCL 169.206(2)(c). Stated another way, the majority's analysis rewrites the statute as follows: "'[e]xpenditure' does not include . . . [a]n expenditure for the establishment *or* administration *of a separate segregated fund* or solicitation of contributions to a separate segregated fund . . . ." Therefore, the majority's interpretation impermissibly adds words to the statute. See *Hiltz v Phil's Quality Market*, 417 Mich 335, 347; 337 NW2d 237 (1983). Indeed, the majority opinion expressly states that "the school district is not making an 'expenditure' for the administration *of a separate segregated fund* . . . because . . . the school district is simply administering the payroll deduction plan . . . ." *Ante* at 19 (emphasis altered); see, also, *ante* at 19 (claiming that MCL 169.206[2][c] supports the majority's conclusion that "the only administrative costs that are excluded under this exclusion are those associated with administering a 'separate segregated fund or independent committee'"). By its own words, the majority displays its need to impermissibly change the language of the statute in order to support its holding.[9]

Thus, although I agree with the majority that the school district is not making an "expenditure" for the administration of a separate segregated fund, that point is irrelevant because that is not what the statutory exclusion requires. Rather, by administering

_____

[9] Indeed, the majority expressly states, without explanation and contrary to the plain language of the statute, that MCL 169.206(2)(c) "does not exclude from the definition of 'expenditure' an 'expenditure' for the 'administration of contributions'; rather it excludes an 'expenditure' for the administration of a 'separate segregated fund or independent committee' . . . ." *Ante* at 20 n 15.

14

*contributions to* a separate segregated fund, the school district's conduct falls squarely within the statutory exclusion from the general definition of "expenditure."[10]

### C. PURPOSE OF MCL 169.257

Finally, the majority supports its interpretation of the MCFA by claiming that the purpose of MCL 169.257 "is to mandate the separation of the government from politics in order to maintain governmental neutrality in elections, preserve fair democratic processes, and prevent taxpayer funds from being used to subsidize partisan political activities," *ante* at 6-7, and only its analysis is consistent with that purpose. To begin with, the majority's soaring rhetoric could easily be classified as nothing more than an impassioned plea in support of the policy that the majority wishes to impose, see, e.g., *ante* at 33, but more importantly, the majority goes well beyond the statutory language in a misguided effort to determine this provision's purpose.

Focusing instead on the statutory language alone, it is clear that the purpose of MCL 169.257 is simply to prevent a public body from using its resources "to make a contribution or expenditure" as those words are defined in MCL 169.204 and MCL

---

[10] The school district's involvement in the payroll deduction plan can properly be described as "[a]n expenditure for the . . . administration . . . of contributions . . . ." MCL 169.206(2)(c). "Administration" is defined as, among other things, "[t]he management of affairs" and "[t]he dispensing, applying, or tendering of something . . . ." *The American Heritage Dictionary*, *Second College Edition* (1982), defs 1 and 7. In this case, the school district's involvement in the payroll deduction plan involves the management and dispensing of employees' contributions to the MEA-PAC. Thus, the common meaning of the words used in the exclusion from the definition of "expenditure" found in MCL 169.206(2)(c) further support the conclusion that the exclusion applies in this case. The majority appears to agree when it states that the school district's administration of the payroll deduction plan only facilitates contributions to the MEA-PAC. See *ante* at 20.

15

169.206, respectively. The majority fails to realize that my interpretation of the MCFA is consistent with the true purpose of MCL 169.257 as determined from the language of that provision because the school district's administration of the payroll deduction plan at issue in this case is neither a "contribution" nor an "expenditure."

## III. CONCLUSION

In my view, the school district's administration of the payroll deduction plan does not violate the MCFA because it is neither a "contribution" nor an "expenditure" under the statutory definitions of those terms. Because the majority's substantive analysis in this case is the product of its erroneous interpretation of the statutory provisions at issue, I respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly

16

S T A T E   O F   M I C H I G A N

SUPREME COURT

MICHIGAN EDUCATION
ASSOCIATION,

        Petitioner-Appellant,

v                                      No. 137451

SECRETARY OF STATE,

        Respondent-Appellee.

_____

HATHAWAY, J. (*dissenting*).

      I dissent from the majority's decision to vacate this Court's December 29, 2010, opinion because nothing in the plain language of MCL 169.257(1) prohibits a school district from administering a payroll deduction system that allows Michigan Education Association (MEA) members to automatically send contributions to the MEA's political action committee (MEA-PAC).[1]  Instead of preserving precedent, this newly comprised majority reverses this Court's previously issued opinion and issues its own opinion for no reason other than that it disagrees with the outcome of the prior opinion.  Moreover, members of the current majority conspicuously fail to explain how this action differs from actions that they vehemently criticized just two short years ago.[2]  I would preserve

_____

[1] The MEA-PAC is a segregated fund under MCL 169.255.

[2] Recall the words of now Chief Justice YOUNG just two years ago:

this Court's December 29, 2010, opinion, which followed the language of the law, because a public school's administration of a payroll deduction system that remits funds to a segregated fund is not precluded by MCL 169.257(1) and is therefore permitted.

## I. ANALYSIS

At issue is whether § 57 of the Michigan Campaign Finance Act (MCFA), MCL 169.257(1),[3] prohibits a public school from administering a payroll deduction system that remits funds to the MEA-PAC. To interpret the MCFA, we must follow the established rules of statutory construction. "Assuming that the Legislature has acted within its constitutional authority, the purpose of statutory construction is to discern and give effect to the intent of the Legislature."[4] Accordingly, a Court must interpret the language of a statute in a manner that is consistent with the legislative intent.[5] In determining the legislative intent, the actual language of the statute must first be examined.[6] "As far as

> The facts have not changed. The text of the statute at issue has not changed. The parties' arguments have not changed. And the rationale advanced in the opinions of this Court has not changed. Yet, within a matter of months, a decision of this Court, thoughtfully briefed, argued, and considered by seven justices, is no longer worth the paper it was written on. Even the casual observer, however, does not really need to ask why. The reason is obvious: . . . the composition of this Court changed. [*United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 27; 795 NW2d 101 (2009) (YOUNG, J., dissenting).]

[3] The MCFA is found at MCL 169.201 *et seq*.

[4] *Potter v McLeary*, 484 Mich 397, 410; 774 NW2d 1 (2009), citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[5] *Potter*, 484 Mich at 411.

possible, effect should be given to every phrase, clause, and word in the statute."[7] When considering the correct interpretation, a statute must be read as a whole.[8] Individual words and phrases, while important, should be read in the context of the entire legislative scheme.[9] In defining particular words within a statute, a court "must 'consider both the plain meaning of the critical word or phrase as well as "its placement and purpose in the statutory scheme."'"[10] When a statute explicitly defines a term, the statutory definition controls.[11]

Section 57 of the MCFA provides in pertinent part:

> A public body or an individual acting for a public body shall not use or authorize the use of funds, personnel, office space, computer hardware or software, property, stationery, postage, vehicles, equipment, supplies, or other public resources *to make a contribution or expenditure or provide volunteer personal services* that are excluded from the definition of contribution under [MCL 169.204(3)(a)]. [MCL 169.257(1) (emphasis added).]

The clear language of § 57(1) specifically prohibits a public body from using, or authorizing the use of, public resources to do three things: (1) make an expenditure, (2) make a contribution, or (3) provide volunteer services that are excluded from the

---

[6] *Id*. at 410.

[7] *Sun Valley*, 460 Mich at 237.

[8] See *id*.

[9] *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[10] *Id*., quoting *Sun Valley*, 460 Mich at 237, quoting *Bailey v United States*, 516 US 137, 145; 116 S Ct 501; 133 L Ed 2d 472 (1995).

[11] *Tryc v Mich Veterans' Facility*, 451 Mich 129, 136; 545 NW2d 642 (1996).

3

definition of "contribution" under MCL 169.204(3)(a). The plain language of the statute does not prohibit any other activity. Therefore, if the administration of the payroll deduction system is not tantamount to doing one of these three things, the administration of the system is permissible under Michigan law.

## A. EXPENDITURE

The first issue is whether a public school's administration of a payroll deduction system that remits funds to the MEA-PAC is an impermissible "expenditure" under § 57. "Expenditure" is specifically defined in the MCFA. The definition of "expenditure" is set forth in MCL 169.206, which provides in pertinent part:

> (1) "Expenditure" means a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. Expenditure includes, but is not limited to, any of the following:
>
> (a) A contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question.
>
> * * *
>
> (2) *Expenditure does not include any of the following:*
>
> (a) An expenditure for communication by a person with the person's paid members or shareholders and those individuals who can be solicited for contributions to a separate segregated fund under [MCL 169.255].
>
> * * *
>
> (c) *An expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee.* [MCL 169.206 (emphasis added).]

4

The definition of "expenditure" is expansive. It includes a payment, donation, loan, or promise of payment of money or anything of ascertainable monetary value for goods, materials, services, or facilities in assistance of, or in opposition to, the nomination or election of a candidate, or the qualification, passage, or defeat of a ballot question. The definition also includes a contribution or a transfer of anything of ascertainable monetary value for purposes of influencing the nomination or election of a candidate or the qualification, passage, or defeat of a ballot question. However, MCL 169.206(2) also expressly excludes items from being classified as expenditures even though they may qualify under the general definition outlined in MCL 169.206(1). Notably, any "expenditure for the establishment, administration, or solicitation of contributions to *a separate segregated fund or independent committee*" is specifically *excluded* from the definition of "expenditure" by MCL 169.206(2)(c).

Turning to the facts of this case, the administration of a payroll deduction system does arguably provide services to the MEA and the MEA-PAC in facilitating payroll deductions from members by providing personnel and computer services. The system allows MEA members to authorize the school to automatically deduct money from their paychecks and remit the funds to the MEA-PAC. The MEA-PAC is a separate segregated fund under MCL 169.255 because it has been established by the MEA, a labor organization, to make contributions to and expenditures on behalf of candidate committees, ballot question committees, political party committees, political committees, and independent committees.[12] Thus, the payroll deduction system administers member

---

[12] MCL 169.255(1) provides, in pertinent part:

contributions to a separate segregated fund. Although this process falls within the general definition of "expenditure" under MCL 169.206(1), the administration of such a system is explicitly excluded from the statutory definition under MCL 169.206(2)(c), which provides that an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee" is not an "expenditure."[13] A public school's administration of a payroll deduction system falls squarely within the statutory exception. The system is set up to facilitate MEA member contributions to their separate segregated fund, the MEA-PAC. Therefore, the administration of the system is *not* an expenditure under the MCFA.

The majority erroneously asserts that the school district's administration of a payroll deduction system is not an "administration . . . of contributions to a separate segregated fund or independent committee"[14] because the district is not administering a fund; rather, the district is only administering the payroll deduction system that remits funds to the MEA-PAC. This argument is unfounded and contrary to the plain language of the statute. The plain language of the statute applies to the administration of

---

A corporation organized on a for profit or nonprofit basis, a joint stock company, a domestic dependent sovereign, or a labor organization formed under the laws of this or another state or foreign country may make an expenditure for the establishment and administration and solicitation of contributions to a separate segregated fund to be used for political purposes. A separate segregated fund established under this section shall be limited to making contributions to, and expenditures on behalf of, candidate committees, ballot question committees, political party committees, political committees, and independent committees.

[13] MCL 169.206(2)(c).

[14] *Id.*

6

*contributions* to a separate segregated fund; the statute does not specify who has to make the contributions. The MEA members' contributions to the MEA-PAC are administered through the payroll deduction system. Thus, the district, by administering the payroll deduction system, is administering contributions to the MEA-PAC, an action that is explicitly allowed according to the plain language of the statute.

In sum, administration of a payroll deduction system is an "expenditure for the establishment, administration, or solicitation of contributions to a separate segregated fund or independent committee" and thus falls within an enumerated exception to the statutory definition of "expenditure." Therefore, the administration of the payroll deduction system is not an "expenditure" as defined by the MCFA and is not prohibited by § 57 on that ground.

## B. CONTRIBUTION

The next issue is whether administration of the payroll deduction system is an impermissible "contribution" under the MCFA. "Contribution," like "expenditure," is specifically defined by the MCFA. The definition of "contribution" under the MCFA is set forth in MCL 169.204, which provides:

> (1) "Contribution" means a payment, gift, subscription, assessment, *expenditure*, contract, payment for services, dues, advance, forbearance, loan, or donation of money or anything of ascertainable monetary value, *or a transfer of anything of ascertainable monetary value* to a person, *made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question*.

> (2) Contribution includes the *full purchase price* of tickets or payment of an attendance fee for events such as dinners, luncheons, rallies, testimonials, and other fund-raising events; an individual's own money or property other than the individual's homestead used on behalf of that

7

individual's candidacy; the granting of discounts or rebates not available to the general public; or the granting of discounts or rebates by broadcast media and newspapers not extended on an equal basis to all candidates for the same office; and the endorsing or guaranteeing of a loan for the amount the endorser or guarantor is liable.

(3) *Contribution does not include any of the following*:

(a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid.

(b) Food and beverages, not to exceed $100.00 in value during a calendar year, which are donated by an individual and for which reimbursement is not given.

(c) *An offer or tender of a contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt.* [Emphasis added.]

The definition of "contribution" includes the term "expenditure." Because "expenditure" is explicitly defined by the MCFA, the statutory definition controls.[15] As explained earlier, the administration of a payroll deduction system is not an "expenditure" under the MCFA and thus cannot be a contribution on that basis. The only other way that the administration of the system could be a "contribution" under the MCFA would be if administering the system resulted in a "transfer of anything of ascertainable monetary value . . . made for the purpose of influencing the nomination or election of a candidate, or for the qualification, passage, or defeat of a ballot question."

The majority argues that the actual and intangible costs associated with the administration of a payroll deduction system constitute a contribution because there is a

---

[15] *Tryc*, 451 Mich at 136.

transfer of something of ascertainable monetary value from the school district to the MEA-PAC and the transfer, although made pursuant to a collective bargaining agreement, is made for the purpose of influencing the nomination or election of a candidate or for the qualification, passage, or defeat of a ballot question. The majority asserts that the resources expended to administer the payroll deduction system have an ascertainable monetary value, and the fact that they are expended for the benefit of the MEA-PAC conveys value to the MEA-PAC. The majority further argues that prepayment for the services does not negate the transfer because MEA-PAC still receives the benefit of the services.

I disagree with this interpretation of the word "transfer" in the statute. Because "transfer" is a nontechnical word that is not defined within the statute, the proper course of action is to first look to the plain meaning of the term to ascertain what the Legislature intended by using "transfer" to define a "contribution."[16] "Transfer" is defined as "to convey or remove from one place, person, etc., to another."[17] In order for there to be a contribution, "anything of ascertainable monetary value" must be conveyed from one entity to another.

There are two possible interpretations of the word "transfer" in the statute. The first interpretation would require that any conveyance of value for services provided to a campaign, regardless of whether the services are paid for, would constitute a

---

[16] MCL 8.3a; *Oakland Co Bd of Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 604; 575 NW2d 751 (1998).

[17] *Random House Webster's College Dictionary* (1997).

9

contribution. The second would require a net conveyance of value in order to be a "transfer of anything of ascertainable monetary value." I believe that the latter is the only logical interpretation. Any other interpretation of "contribution" would lead to an absurd result, and statutes must be construed to prevent absurd results.[18] For example, under the majority's interpretation, a print shop that sells signage to a campaign in the normal course of business would be making a contribution to the campaign because it has transferred something of monetary value to the campaign, even though the shop has been compensated for the cost of providing the signage. Such an interpretation of "contribution" defies common sense, and I do not read the statute in this manner. Instead, I conclude that the statute requires a net conveyance of "anything of monetary value" in order for there to be a campaign contribution. If costs for administering the payroll deduction system are paid in advance, there is no net conveyance of anything of monetary value, and there is no contribution.

Furthermore, my conclusion that a "contribution" under MCL 169.204(1) requires a net transfer of value comports with the remainder of that section, which specifically *excludes* from the statutory definition of "contribution" any "contribution if expressly and unconditionally rejected, returned, or refunded in whole or in part within 30 business days after receipt." MCL 169.204(3)(c). In other words, if the contribution is rejected, returned, or refunded, it is no longer a "contribution" under the MCFA. Moreover, MCL 169.204(2) explains that a "contribution" includes "the granting of discounts or rebates not available to the general public . . . ." This implies that when an entity provides

---

[18] *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998).

10

products or services at full price, the entity is not making a contribution. Thus, the statute clearly requires that there be a net transfer of value in order for there to be a contribution under the MCFA.

The majority erroneously asserts that the payroll deduction system constitutes something of "ascertainable monetary value" because there is inherent value to the MEA-PAC in having payroll deductions automatically taken from members' wages as opposed to requiring individual solicitations by the MEA-PAC. This argument ignores the plain definition of the term "ascertainable." "Ascertainable" is also a nontechnical word that is not defined within the statute, so we must look to the ordinary meaning of the word to discern what the Legislature intended. "Ascertain" is defined as "to find out definitely; learn with certainty or assurance."[19] Thus, the phrase "ascertainable monetary value" in the statute requires that the monetary value conferred be determined definitely, with certainty and assurance. The majority hypothetically opines that the intangible benefits the union receives because of the payroll deduction system confers something of ascertainable monetary value. The majority reasons that ascertainable monetary value is self-evident from the fact that the defendant has bargained for the payroll deduction system in its contract with the school district and has appealed the right to enforce the provision in this Court. However, these actions do not definitely identify with certainty the amount of monetary value that the payroll deduction system confers to the MEA. Therefore, according to the terms of the statute, the intangible benefits conferred to the

---

[19] *Random House Webster's College Dictionary* (1997).

11

MEA by the administration of a payroll deduction system do not constitute a "contribution."

In this instance, the MEA plans to prepay the school district for all ascertainable costs—those which are definitely and certainly identified—associated with the administration of a payroll deduction system, and in fact asked the Secretary of State for a declaratory ruling regarding the costs to be prepaid. Thus, the administration of the payroll deduction system will not result in a net transfer of anything of ascertainable monetary value as all costs will be ascertained and prepaid.

The majority also erroneously asserts that the payroll deduction system constitutes an "in-kind contribution" under MCL 169.209(3) as a "contribution . . . other than money." Again, the majority identifies the hypothetical intangible benefits that the administration of a payroll deduction system confers on the MEA as the impermissible contributions. However, this argument ignores that an in-kind contribution must still be a "contribution" as defined by the statute. The hypothetical intangible benefits are not contributions because, as discussed, they do not have an ascertainable monetary value. The MEA contemplates prepaying all costs associated with the administration of the deduction system that can be ascertained. Accordingly, there is no contribution under the MCFA, and a public school's administration of a payroll deduction system is not prohibited by § 57 on that ground.

## C. VOLUNTEER PERSONAL SERVICES

The final issue is whether the administration of the system in question impermissibly "provide[s] volunteer personal services that are excluded from the

12

definition of contribution under section 4(3)(a)" of the MCFA. As noted earlier, § 4(3) provides:

> Contribution does not include any of the following:
>
> (a) Volunteer personal services provided without compensation, or payments of costs incurred of less than $500.00 in a calendar year by an individual for personal travel expenses if the costs are voluntarily incurred without any understanding or agreement that the costs shall be, directly or indirectly, repaid. [MCL 169.204(3).]

Although such services are thus not considered a contribution for purposes of the rest of the MCFA, § 57 specifically indicates that public bodies cannot use public resources to provide volunteer services that are not compensated. However, the administration of the payroll deduction system at issue does not involve volunteer services by public employees because the MEA intends to prepay for all services rendered. Because volunteer services are not defined by the statute, again the proper course of action is to look to the plain meaning of the terms to discern the legislative intent. "Volunteer" is defined as "a person who performs a service willingly and without pay."[20] Willingness to perform an activity is not enough to fall within the scope of this subsection; the activity must also be performed without pay. In this case, the MEA fully anticipates payment and plans to prepay for any administration costs. As a result, a public school's administration of a payroll deduction system does not "provide volunteer personal services that are excluded from the definition of contribution under section 4(3)(a)" of the MCFA and is not prohibited by § 57 on this final ground. Therefore, the

---

[20] *Random House Webster's College Dictionary* (1997), def 2.

administration of a payroll deduction system by a public school is permitted under the MCFA.

## II. CONCLUSION

I dissent from the majority's decision to vacate this Court's December 29, 2010, opinion. A public school may administer payroll deductions for its employees who remit funds to the MEA-PAC because MCL 169.257(1) only prohibits a public body from using public resources to do three things: (1) make an expenditure, (2) make a contribution, and (3) provide volunteer personal services that are excluded from the definition of "contribution" under MCL 169.204(3)(a). The administration of the system at issue does not meet any of those criteria. Thus, the administration of the payroll deduction system is permitted under the MCFA, and the Court of Appeals erred by concluding that it is not. Accordingly, I dissent.

Diane M. Hathaway

14